**FOOTE MINERAL COMPANY, a Pennsylvania Corporation**

v.

**The UNITED STATES.**

**No. 12–78.**

United States Court of Claims.

July 1, 1981.

---

Randy L. Parcel, Denver, Colo., Atty. of record, for plaintiff. Joseph E. Meyer, III, Denver, Colo., Earl M. Hill, Reno, Nev., and Parcel, Talesnick, Meyer & Schwartz, Denver, Colo., of counsel.

Dorothy R. Burakreis, Washington, D.C., with whom was Acting Asst. Atty. Gen. Anthony C. Liotta, Washington, D.C., for defendant. Kenneth G. Lee, Washington, D.C., of counsel.

Before SKELTON, Senior Judge, and KASHIWA and BENNETT, Judges.

BENNETT, Judge:

This is a suit for refund of royalties paid by plaintiff to the United States for lithium which plaintiff mines on federal lands near Silver Peak, Nevada. Defendant counterclaims for additional royalties. Plaintiff seeks review of a decision by the Department of the Interior Board of Land Appeals (IBLA or the board) adverse to plaintiff on its claim and upholding defendant's counterclaim. *Foote Mineral Co.*, 34 IBLA 285 (1978). The case comes before the court on the parties' cross-motions for summary judgment. We hold for plaintiff.

Plaintiff, Foote Mineral Company (Foote), holds sodium and potassium leases acquired by it or its predecessor in interest

in 1963, 1964, and 1968. The leases give plaintiff the right to mine sodium compounds and "related products" and potassium and "associated deposits" at the Silver Peak sites, subject to the payment of a royalty to the United States. Defendant contends that the lithium is covered by the lease on the ground that it is a "related product" or "associated deposit." The leases were issued to plaintiff and its predecessor upon applications by them which contained recitals that they had discovered valuable deposits of sodium and potassium at the Silver Peak sites. One of the prerequisites for the issuance of sodium and potassium leases is that the lands to be covered by the lease must contain valuable deposits of sodium and potassium. 30 U.S.C. §§ 262, 282 (1976). Another prerequisite is that the lands must be chiefly valuable for sodium and potassium. *Id.* Plaintiff has also located unpatented placer mining claims pursuant to the General Mining Laws, 30 U.S.C. §§ 21–54, on all of the lands which are covered by the sodium and potassium leases in issue. The major difference between minerals extracted pursuant to "locations" under the General Mining Laws and those pursuant to leases is that located minerals may be mined without payment of a royalty to the United States whereas a royalty is required for leased minerals.

Although plaintiff holds sodium and potassium leases, it is not interested in and does not sell or use sodium or potassium. Instead, plaintiff is interested in lithium which exists in an underground brine in solution with other minerals, including sodium and potassium. The brine is pumped to the surface and the lithium is extracted and sold. The sodium and potassium are either returned to the underground brines or stockpiled on the lands covered by the mining claims and leases. Foote regards the sodium and potassium as contaminants in its operations since they actually interfere with the production of lithium.

Plaintiff began production of lithium at Silver Peak in early 1966. It paid royalties to the United States on the lithium until December 1974. At that point, the United States Geological Survey (USGS), which administered the leases, informed plaintiff that plaintiff had been incorrectly calculating the royalties due and that more were owed. In reviewing USGS's position on the royalty calculations, Foote also reviewed the question of whether the lithium produced at Silver Peak was a locatable or leaseable mineral. Plaintiff concluded that lithium was locatable and that therefore no royalties were due at all. Plaintiff appealed the USGS decision and in that appeal demanded a refund of all royalties previously paid. The Acting Director of USGS ruled against plaintiff on all issues. Plaintiff then appealed to the board and requested an evidentiary hearing. A hearing was denied on the ground that there were no facts in dispute and on April 17, 1978, the board ruled against plaintiff. Plaintiff now seeks review of the board decision.

■ This is apparently the first time that we have been called upon to review an IBLA decision. Our jurisdiction to review the board is not disputed. Plaintiff seeks a refund pursuant to 43 U.S.C. § 1734(c) (1976), which provides:

In any case where it shall appear to the satisfaction of the Secretary that any person has made a payment under any statute relating to the sale, lease, use, or other disposition of public lands which is not required or is in excess of the amount required by applicable law and the regulations issued by the Secretary, the Secretary, upon application or otherwise, may cause a refund to be made from applicable funds.

An earlier and quite similar version of this statute was held to establish jurisdiction in the Court of Claims for those claiming entitlement to refunds. *United States v. Laughlin,* 249 U.S. 440, 442–43, 39 S.Ct. 340, 341, 63 L.Ed. 696 (1919). We think that decision carries over to the present statute. Lest there be any confusion, we note that the board is the Secretary's representative and decides the cases before it as fully and finally as might the Secretary. 43 C.F.R. §§ 4.1, 4.1(b)(3) (1980). The board's decision is the Secretary's decision, therefore, for

purposes of jurisdiction to review the agency's action pursuant to the above refund statute.

■ As to the proper scope of review, the parties are generally in agreement that Administrative Procedure Act-type review is appropriate. *See* 5 U.S.C. § 706 (1976). However, they differ as to the proper standard for review of the board's findings of fact. Plaintiff would have us review the board's factual findings to see if they are supported by substantial evidence. Defendant, on the other hand, asserts that such findings are conclusive and there may be *no* review.

■ Defendant's position is both inconsistent and untenable. It is inconsistent because the Administrative Procedure Act does provide for review of factual findings under either the substantial evidence test or the arbitrary and capricious test. 5 U.S.C. § 706(2)(A), (E) (1976); *Doe v. Hampton*, 566 F.2d 265, 271–72 n.15 (D.C.Cir.1977); K. Davis, Administrative Law of the Seventies § 29.00 (1976). It is untenable because no statute precludes review of the board's factual findings, or otherwise vests its decisions with finality, and we discern no other reason for holding that the Department of the Interior is entitled to a greater shield from judicial scrutiny than other agencies. *Coleman v. United States*, 363 F.2d 190, 195 (9th Cir. 1966), *rev'd on other grounds*, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968). We are quite familiar with nonstatutory review of agency adjudications in other contexts. We think it proper to employ the same standards for review of IBLA decisions as we have for so long in those other cases. That standard is to set aside agency decisions found to be illegal because they are arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, not in substantial compliance with procedural requirements, or otherwise contrary to law. *E. g. Summers v. United States*, Ct.Cl., 648 F.2d 1324 (1981) (civilian pay); *Pasadena Hospital Ass'n v. United States*, 223 Ct.Cl. ——, 618 F.2d 728 (1980) (Medicare); *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979) (military pay).

Plaintiff seeks relief on four grounds: (1) that there are no valuable deposits of sodium or potassium at Silver Peak and therefore the leases are invalid; (2) that the Silver Peak lands are not chiefly valuable for sodium or potassium and therefore the leases are invalid; (3) that lithium is not covered by the leases because it is not a "related product" of sodium or an "associated deposit" of potassium; (4) that the board followed improper procedures in the course of its decision, relying on evidence not of record. We rest our decision on the first ground and so do not need to reach the other three.

As already mentioned, were plaintiff able to mine lithium at Silver Peak pursuant to its locations under the General Mining Laws, it could do so without the payment of a royalty to the United States. Minerals extracted pursuant to the General Mining Laws are called "locatable." The Mineral Leasing Act, however, excepts sodium, potassium, and certain other minerals from the operation of the General Mining Laws under certain conditions and requires the payment of a royalty. 30 U.S.C. §§ 262, 282 (1976). Minerals extracted pursuant to the Mineral Leasing Act are called "leasable." Ordinarily, lithium is a locatable mineral. However, defendant contends that it becomes leasable when it exists in a brine with sodium or potassium under the "related products" and "associated deposits" language in the leases. The statutes provide for the payment of a royalty on sodium, potassium and "related products." *Id.*

One of the required conditions for bringing the Mineral Leasing Act into effect for sodium and potassium mining is that the lands to be leased must contain valuable deposits of sodium or potassium. This is an explicit statutory requirement. 30 U.S.C. §§ 262, 282 (1976). The board has in a recent case held that brines containing sodium are not leasable where the sodium deposits are not commercially valuable. *United States v. Bardsley*, 45 IBLA 367 (1980). The same principle would apply to potassium. The effect of a finding that the brines

here do not contain valuable deposits of sodium or potassium would be to render the leases invalid, and to render the Mineral Leasing Act inapplicable. The result would be that the General Mining Laws would apply and these brines and the lithium contained in them would be subject to location and removal without the payment of a royalty.

Plaintiff contends that there are no valuable deposits of sodium or potassium at its Silver Peak sites and that there were none at the time its leases issued. It offers affidavits to that effect and defendant has not responded to them. Plaintiff claims it sought the leases solely as the mechanism for obtaining the rights to develop the lithium and defendant concedes that all parties understood this to be the case. Foote says that it sought the leases because, at the time, the Department of the Interior had a policy that where otherwise locatable minerals were dissolved in a brine with sodium or potassium, the locatable minerals had to be leased even if the deposits of leasable minerals were not valuable. Plaintiff offers us a 1963 internal memorandum of the Department of the Interior which supports this contention. Again, defendant does not dispute this. Plaintiff's argument is that it was wrong for the Department to require leases for the lithium where there were no valuable deposits of sodium or potassium since that is an explicit statutory prerequisite to leasing.

As noted, defendant has not disputed the above assertions of fact. Instead, defendant asserts that plaintiff's argument on the issue of the existence of valuable deposits of sodium or potassium is barred by waiver or estoppel. Alternatively, defendant insists that the case should be remanded to the board for trial on the matter.

■ Defendant's waiver defense is that plaintiff has waived this contention by failing to raise it at the administrative level. However, we find, after an examination of the administrative record, that plaintiff did raise the issue. In plaintiff's "Statement of Reasons in Support of Appeal" before the board, we find the following passage:

Further, the lithium at Silver Peak can in no way be construed as a by-product of any Leasing Act mineral since neither sodium, potassium, nor any other Leasing Act mineral is or currently could be produced for sale in commercial quantities by Foote at Silver Peak.

Also, in Foote's "Supplemental Request for Hearing to Present Evidence on Issues of Fact," the point is again raised:

Likewise, opposition by the Government to Foote's contention that neither sodium nor potassium are or could be produced for sale in commercial quantities from its Silver Peak operation presents a question of fact.

Defendant argues that plaintiff never claimed the leases were invalid before the board. However, while plaintiff never did so in so many words, the argument of invalidity follows implicitly from the argument that valuable deposits of sodium and potassium did not exist. It is important to note that the board refused to hold an evidentiary hearing so that plaintiff never had the opportunity for a full exposition of the facts on this issue. However, the above-quoted portions of plaintiff's briefs before the board do satisfy the requirement that an issue be raised at the administrative level. The defense of waiver therefore fails.

■ Defendant also argues that plaintiff should be estopped from asserting that there are or were no valuable deposits of sodium or potassium at Silver Peak because of the statements in the lease applications to the contrary. We see no basis for estoppel in this case. Where defendant asserts estoppel as an affirmative defense, it has the burden of establishing that all the elements of estoppel are present. *McGraw-Hill, Inc. v. United States*, 224 Ct.Cl. ——, —— n.12, 623 F.2d 700, 708 n.12 (1980); *Tom W. Carpenter Equip. Co. v. General Elec. Credit Corp.*, 417 F.2d 988, 990 (10th Cir. 1969). Defendant does not claim that it was in any way misled by the recitals in the lease applications that there were valuable deposits of sodium and potassium or that it was ignorant of the true facts. It

does not claim that it relied on such representations in any way to its detriment. Nor does it assert that plaintiff has gained any unfair advantage over others. It is simply not enough to contend that the recitals are contrary to plaintiff's present contentions. *Russell Corp. v. United States*, 210 Ct.Cl. 596, 613, 537 F.2d 474, 484 (1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977); *Emeco Indus., Inc. v. United States*, 202 Ct.Cl. 1006, 1015, 485 F.2d 652, 657 (1973). Finally, we note that plaintiff's earlier action stemmed from the parties' misapprehension of the law. Under these circumstances, the defense of estoppel must also fail.

■ Our conclusion, based on the above discussion, is that the board erred and that its decision must be set aside. Plaintiff asserted below that there were no valuable deposits of sodium or potassium available at the Silver Peak sites. Such an assertion, if shown to be true, would invalidate the leases under the statutes, 30 U.S.C. §§ 262, 282 (1976). However, the board refused to grant an evidentiary hearing on this issue. It disposed of the matter by simply noting that "the leases were issued on the basis of claims by appellant's [Foote's] predecessor that it had discovered a valuable deposit of sodium or potassium." The board's reasoning is not clear. In essence, it made an implicit finding of fact that valuable deposits existed, based solely on the recitals. In so doing, the board erred as a matter of procedure. The recitals do not constitute irrefutable evidence of the existence of valuable deposits and so the board should not have found the facts, which were disputed, without holding an evidentiary hearing. In such a hearing, plaintiff would have had the opportunity to develop the facts fully and overcome the indication of the recitals in the lease applications that valuable deposits of leasable minerals existed. Under such circumstances, summary disposition of the case was improper. The board must therefore be reversed.

■ The next issue is what to do with the case at this point. As indicated, defendant insists that if we reject its defenses

of waiver and estoppel, as we have done, the case must be remanded to the board for trial on the issue of whether there were valuable deposits of sodium or potassium. Plaintiff would have any further trial in this court on a *de novo* basis. However, the basic facts as asserted by plaintiff have not been contested by defendant. Plaintiff has offered affidavits to the effect that the Silver Peak mines do not contain valuable deposits of sodium or potassium and did not at the time the leases issued, and defendant has not responded to the affidavits. In addition, defendant has not indicated what further relevant facts it would show at an evidentiary hearing. Under such circumstances, we do not see the need for a trial on liability. Under our rules, where a motion for summary judgment is made and supported by affidavits—

> * * * an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be entered against him. [Ct.Cl. Rule 101(f).]

*Bryant v. United States*, 216 Ct.Cl. 409, 410–11 (1978); *Pacific Far East Line, Inc. v. United States*, 206 Ct.Cl. 378, 385, 513 F.2d 1355, 1359 (1975); *Hartwig v. United States*, 202 Ct.Cl. 801, 810–11, 485 F.2d 615, 620–21 (1973). We are unwilling to consume the resources of the court and the plaintiff by remanding the case for trial either to the board or to our trial division on the hypothesis of a factual issue which defendant is unwilling to preserve.

■ The case is ripe for summary judgment based on the facts as recited in this opinion. In sum, we hold that valuable deposits of sodium or potassium do not exist at the Silver Peak mines and did not exist at the time the instant leases were issued. Therefore, the leases were issued in excess of statutory authority and are invalid. Plaintiff is entitled to recover royalties paid under the leases.

Plaintiff's petition also prays for a determination that plaintiff owes no royalties on lithium that will be mined in the future. To make such a determination would require declaratory judgment authority which this court unfortunately does not have. *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Therefore, that particular part of the relief requested must be denied. We are confident, however, that the defendant's common sense will prevail and that plaintiff's apprehensions about defendant's trying to collect such royalties in the face of the collateral estoppel effects of this opinion may be put to rest.

It also follows from our opinion that defendant's counterclaim for additional royalties based on these leases must be dismissed.

There remains the question of the amount of plaintiff's recovery. Here we will follow our usual practice in other cases of reviewing agency adjudication and remand to our trial division for a determination of the amount of recovery. *E. g. Faith Hosp. Ass'n v. United States*, 225 Ct.Cl. ——, 634 F.2d 526 (1980) (Medicare); *Bur v. United States*, 224 Ct.Cl. ——, 621 F.2d 415 (1980) (civilian pay); *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979) (military pay). *But cf. United States v. Anthony Grace & Sons*, 384 U.S. 424, 430 n.6, 86 S.Ct. 1539, 1543 n.6, 16 L.Ed.2d 662 (1966) (government contract: parties' contract had term requiring that case be remanded to administrative board on issues of damages). We note as a final matter that defendant's answer asserts that the statute of limitations bars any recovery for royalties paid prior to January 8, 1972. The parties have not yet addressed this issue and may do so on remand. We express no opinion on the matter.

In sum, having heard oral argument, and upon consideration of the briefs, exhibits and administrative record, we grant plaintiff's motion for summary judgment. Defendant's motion for summary judgment is denied and its counterclaim is dismissed. The case is remanded to the trial division for a determination of the amount of recovery under Ct.Cl. Rule 131(c).