**BAYSHORE RESOURCES COMPANY, INC., et al.**

v.

**The UNITED STATES.**

**No. 699–81C.**

United States Claims Court.

June 3, 1983.

Clement Theodore Cooper, Washington, D.C., for plaintiffs.

Pauline H. Milius, Washington, D.C., with whom was Asst. Atty. Gen. Carol E. Dinkins, Washington, D.C., for defendant. Roger A. Jarrell, Dept. of the Interior, Washington, D.C., of counsel.

## OPINION

LYDON, Judge:

This case comes before the court on motions for summary judgment filed by the parties. The parties claim there are no genuine issues of material facts in dispute, and each seeks summary judgment as a matter of law.

In their complaint, seven plaintiffs allege that the United States, acting through the Secretary of the Interior, wrongfully and in bad faith challenged certain unpatented mining claims held by them, and numerous other individuals and entities, which resulted in administrative and judicial declarations that such mining claims were invalid.[1] Plaintiffs allege that the defendant, in challenging the validity of such claims, breached express and implied contracts, as well as fiduciary duties owed plaintiffs, and unconstitutionally "took" the plaintiffs alleged property interests in these various mining claims. Plaintiffs seek several hundred billion dollars in damages and ask that the unpatented mining claims be reinstated as valid, with directions that applications for patents be processed expeditiously. In addition, plaintiffs seek a detailed accounting of "trust" monies held by the government and a determination of the rights of individual beneficiaries in the trust, with distribution to be made accordingly.

In its motion, defendant maintains, *inter alia,* that this court lacks jurisdiction over this action, and that, in any event, the claims asserted are barred by the statute of limitations and/or by the doctrine of *res judicata.* Plaintiffs oppose said motion on the ground that defendant is equitably estopped from raising any defenses to plaintiffs' claims, and have filed a cross-motion for summary judgment in which plaintiffs argue that the materials attached to their cross-motion clearly entitled them to money judgments.

## I.

▮ Plaintiffs' complaint centers on unpatented placer mining claims in Colorado, Wyoming, and Utah that arose from the asserted location and discovery of valuable, locatable minerals found in lands which comprise the Green River Formation. Under applicable federal mining laws, citizens are permitted to explore, discover, and extract valuable minerals from the public domain and may obtain title to lands containing such discoveries. *See* 30 U.S.C. Sec. 22 *et seq.* (1976). A locator may obtain the right to possession of certain lands subject to a claim if: (1) such land is mineral in character, and (2) there is adequate mineral discovery within the limits of the claim. *Cameron v. United States,* 252 U.S. 450, 456, 40 S.Ct. 410, 411, 64 L.Ed. 659 (1920). The Secretary of the Interior has the authority to recognize valid claims, eliminate invalid claims, and preserve the rights of the public. *United States v. Coleman,* 390 U.S. 599, 600, n. 1, 88 S.Ct. 1327, 1329 n. 1, 20 L.Ed.2d 170 (1968); *Cameron v. United States, supra,* 252 U.S. at 460, 40 S.Ct. at 412.

In this case, one individual, Merle I. Zweifel (Zweifel) served as the "locator" and purportedly located all of the unpatented mining claims in question during the period between May 1966 through December 1969. The plaintiffs hired Zweifel to locate and prospect for dawsonite, gold, silver and uranium mining claims in the above-mentioned geographic areas. In return for Zweifel's services, plaintiffs paid him certain consideration. Zweifel's location activities consisted of filing claim notices at various court clerk's offices and posting notices or identification markers on groups of claims, but not on individual claims. The Department of the Interior filed several administrative and judicial challenges or "contests" to the mining claims allegedly located by Zweifel for the plaintiffs. In every judicial and administrative challenge, the mining claims were found to be null and void.

In their complaint, which assumed the right of plaintiffs to represent various classes of claimants, plaintiffs identified the various classes of claimants as follows:

---

1. Plaintiffs, by separate motion, seek class action certification as representatives of numerous other individuals and entities who, they contend, have similar claims. Since the court concludes, as hereinafter discussed, that defendant's motion should be granted, plaintiffs' motion for class action status and attendant motion for waiver of filing fee in excess of $16 are rendered moot and both motions are therefore denied. In any event, the other members of the class should not be invited to board a sinking ship. *See Clincher v. United States,* 205 Ct.Cl. 8, 11, 499 F.2d 1250, 1252 (1974).

a. Class I claimants who held unpatented mining claims situated in the Piceance Creek Basin, Colorado, during certain periods and who were named as Contestees in an Administrative action numbered Colorado Contest No. 441.

b. Class II claimants who held unpatented mining claims situated in Washakie Basin, Wyoming, during certain periods and who were named as Defendants in a Civil Action filed in the United States District Court for the District of Wyoming, under Civil Action Number 5784.

c. Class III claimants who held unpatented mining claims situated in the Uintah Basin, Utah, and who were named as Contestees in an Administrative Action, numbered Utah Contest No. 10700.

d. Class IV claimants who held unpatented mining claims situated in Washakie Basin, Wyoming, and who were named as Contestees in Administrative Actions, numbered Contest W–28091, Contest W–28124, and Contest W–28126.

e. Class V claimants who held unpatented mining claims situated in Washakie Basin, Wyoming, and who were named as Contestees in an Administrative Action, numbered Contest W–27951, et seq.

From the complaint and the assertion therein that the seven plaintiffs are representative of each of the above classes, one could conclude that at least one of the plaintiffs was a claimant in one or more of the classes of claimants set forth above. The litigation history with respect to the unpatented mining claims asserted by each class of claimants is set forth below.

### (a) *Colorado Contest No. 441*

In August 1968, the Department of the Interior (DOI) initiated Colorado Contest No. 441 before the DOI, Office of Hearings and Appeals, challenging approximately 2,910 unpatented dawsonite mining claims held by at least 239 persons and filed by Zweifel in Moffat Rio Blanco and Garfield Counties, Colorado.[2] DOI sought to have the unpatented dawsonite mining claims declared null and void for failure to locate the claims in accordance with the applicable mining laws, and for failure to discover a valuable, locatable mineral deposit within the meaning of the mining laws and within the limits of the claims. After a hearing on the challenge, followed by submission of post hearing briefs and oral argument, an Administrative Law Judge (ALJ) ruled on February 25, 1972, in a lengthy opinion that (1) claimants had not located the claims in accordance with the mining laws, and (2) claimants had not located a valuable, locatable mineral deposit. *United States v. Merle I. Zweifel,* U.S. Department of Interior, Office of Hearings and Appeals, Colorado Contest No. 441, February 25, 1972. Claimants appealed the ALJ's decision to the Interior Board of Land Appeals (IBLA). The IBLA affirmed the ALJ's ruling on May 29, 1973. *United States v. Merle I. Zweifel,* II IBLA 53 (May 29, 1973).

Claimants then sought judicial review of the decision of the IBLA holding that the Colorado Contest No. 441 unpatented mining claims were null and void. On January 23, 1975, the United States District Court for the District of Colorado upheld the IBLA decision, confirming, *inter alia,* that alumina (aluminum which was to be found in the minerals) was not present in the claims in a quantity sufficient for economical and commercial extraction and marketing; that the claims were not sufficiently marked; and that the ALJ did not deny the plaintiffs due process. *Roberts v. Morton,* 389 F.Supp. 87 (D.Colo.1975).

On appeal the United States Court of Appeals for the Tenth Circuit, on November 19, 1976, affirmed the district court's decision, holding that all applicable procedural requirements had been met; that evidence sustained the finding that the mining claims were invalid for failure to establish that the claims related to "valuable mineral

---

**2.** It is noted that the attorney for the contestees in the administrative proceedings and the plaintiffs and plaintiff-appellants in the subsequent judicial proceedings was Clement Theodore Cooper, plaintiffs' counsel in the present proceedings. It seems clear that four of the plaintiffs in the present action (Ernest Meunier, Anthony Nappi, Kenneth Roberts, and Donald Russell) were contestees in Colorado Contest No. 441.

deposits;" and that the contest proceeding was not barred by the doctrine of laches. *Roberts v. Morton,* 549 F.2d 158 (10th Cir. 1977). Thereafter, plaintiffs' petition for certiorari seeking review of the Tenth Circuit decision was denied. *Roberts v. Andrus,* 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977).

### (b) *Federal Civil Action No. 5784 District of Wyoming*

The government brought a civil action in the United States District Court for the District of Wyoming on October 17, 1972, seeking a judgment "quieting title" to certain interests in lands within the Green River and Washakie Basins of Wyoming. At least 200 persons were named as defendants in this action. It is not clear which, if any, of the seven named plaintiffs in this action were involved in that litigation. The government claimed that this group of claimants had no right, title or interest in and to the lands and the minerals therein because: (1) the claims were not located in good faith for mining purposes; (2) no discovery had been made within the confines of any of the claims locatable under the mining laws; (3) no discovery had been made of a valuable mineral deposit; and (4) the claims were not located in accordance with the mining laws of the United States and the State of Wyoming.

After a trial, the court rendered a judgment in favor of the government, invalidating the mining claims in question and quieting title to the lands in issue. *United States v. Merle I. Zweifel,* No. 5784 (D.Wyo. Dec. 26, 1973) (unpublished opinion). More specifically, the court held that the challenged claims by Zweifel and others constituted a cloud on the title of the United States to public lands and that said claims were invalid because: (1) the claims were not located in good faith for mining purposes; (2) the claimants made no discovery of mineral deposits locatable under federal mining law; (3) the claimants made no discovery of valuable mineral deposits; and (4)

the claims were not located in compliance with federal and state procedures with respect to the fixing of notice on and designating the boundaries of each claim.

Plaintiff argued on appeal, *inter alia,* that the district court lacked original jurisdiction over the matter. On January 14, 1975, the United States Court of Appeals for the Tenth Circuit affirmed the district court. *United States v. Zweifel,* 508 F.2d 1150 (10th Cir.1975). Thereafter, the United States Supreme Court denied claimants' petition for certiorari, *Roberts v. United States,* 423 U.S. 829, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975), *rehearing denied,* 423 U.S. 1008, 96 S.Ct. 438, 46 L.Ed.2d 379 (1975).

### (c) *Utah Contest No. 10700*

Plaintiffs, in their complaint, also seek to represent those individuals or entities with unpatented mining claims in the Uintah Basin, Utah, who were named as contestees in Utah Contest No. 10700 on September 25, 1972, relative to an administrative challenge to the validity of unpatented placer mining claims in Unitah County, Utah. Approximately 300 individuals or entities were named as contestees. On May 27, 1975, after a hearing, an ALJ for the DOI, Office of Hearings and Appeals, ruled that the aforementioned claims were null and void. *United State v. Zweifel,* Utah Contest No. 10700, DOI, Bureau of Hearings and Appeals (May 27, 1975).[3] On October 16, 1975, the contestees appeal of the ALJ's decision to the IBLA was dismissed for failure to accompany the notice of appeal with a statement of reasons as required by 43 C.F.R. No. 4.412. *See* 43 C.F.R. 4.402 (1975). The contestees-appellants also failed to provide any explanation for their failure to file a statement of reasons as required by 43 C.F.R. Sec. 4.412. *See* 43 C.F.R. 4.401 (1975). There is no evidence in the materials before the court that plaintiffs made any effort to reinstate their appeal and, thus, attempt to pursue their administrative remedies or seek, if necessary,

**3.** Noteworthy is that the ALJ, in reaching his decision, relied on several prior cases, cited in the text *supra,* involving Merle Zweifel and others which the Judge found to be factually analogous and thus dispositive of the case before him especially on the issue of whether there was lack of mineral discovery relative to said claims.

appropriate judicial review of the matter. On the basis of the materials presently before the court, it is impossible to state which of the plaintiffs, if any, were involved in this administrative challenge to the validity of unpatented placer mining claims.

(d) *Contest Nos. W–28091, W–28124, and W–28126, Wyoming*

This claimant class, as set forth in plaintiffs' complaint, consists of those individuals or entities with unpatented mining claims in the Washakie Basin, Wyoming, who were named as contestees in Contest Nos. W–28091, W–28124, and W–28126 filed on October 28, 1971. The government filed these contests to challenge, once again, the validity of certain asserted unpatented mining claims. On September 4, 1973, an ALJ for DOI ruled, after a hearing on the matter, that these mining claims were invalid. This decision was appealed to, and upheld by, the IBLA on March 20, 1974. *United States v. Zweifel,* Contest Nos. W–28091, W–28124, W–28126, 15 IBLA 123 (Mar. 20, 1974). On Appeal to the United States District Court for the District of Wyoming, the District Court affirmed the IBLA's decision. *Anderson v. Morton,* Cir. No. 74–151 (D.Wyo. Nov. 7, 1975) (unpublished opinion). Thereafter, plaintiffs' counsel, Clement Theodore Cooper, filed a notice of appeal that was later withdrawn upon motion, which stated that "[A]fter a more detailed review of the Trial Court's ruling and the reasons given therefor, Plaintiffs feel that further pursuit of the above causes would be fruitless." On the basis of the materials presently before the court, it is impossible to state which of the plaintiffs, if any, were involved in this administrative challenge to the validity of unpatented placer mining claims.

(e) *Contest Nos. W–27951, et seq., Wyoming*

This claimant class, as set forth in plaintiffs' complaint, consists of those with mining claims in the Washakie Basin, Wyoming, who were named as contestees in a consolidated action involving numerous contests, hereinafter referred to as Contest Nos. W–27951, et seq. This consolidated administrative contest, filed October 28, 1971, challenged the validity of approximately 1,583 placer mining claims located in Sweetwater and Carbon Counties, Wyoming. On October 15, 1973, the ALJ for DOI ruled, after a hearing, that the claims were null and void. This decision was upheld by the IBLA on June 26, 1974. *United States v. Zweifel,* Contest Nos. W–27951, 16 IBLA 74 (1974). On appeal to the United States District Court for the District of Wyoming, the court affirmed the decision of the IBLA. *Burkhardt v. Morton & IBLA,* Civ. No. C74–152 (D.Wyo. Nov. 1975) (unpublished opinion). Thereafter, plaintiffs, again through their counsel, Clement Theodore Cooper, withdrew their appeal of the district court decision by the same motion they used to withdraw their appeal in *Anderson v. Morton,* Cir. No. 74–151, *supra,* discussed in section (d) above.

II.

*Jurisdiction*

An examination of plaintiffs' complaint discloses that the causes of action asserted therein rest squarely on the assumption that plaintiffs held valid unpatented mining claims. If plaintiffs' unpatented mining claims are held to be null and void, plaintiffs' causes of action lack foundation and substance and must be dismissed. As indicated above, DOI has determined that plaintiffs' unpatented mining claims were null and void. When these determinations were appealed to appropriate federal courts, they were upheld.

■ While plaintiffs' complaint and briefs present a melange of verbiage, stripped to essentials the basic facts are that plaintiffs are contesting the determinations, previously reached by the DOI that their unpatented mining claims were null and void. In this action, plaintiffs charge that the Secretary of Interior acted unfairly and in bad faith in challenging their unpatented mining claims and, after appro-

priate proceedings, declaring them to be null and void.[4]

Defendant maintains that the court lacks jurisdiction over plaintiffs' action, citing *Freese v. United States,* 221 Ct.Cl. 963 (1979). While plaintiffs argue that they do not seek review of the determinations of DOI that their unpatented mining claims were null and void, the plain fact is that unless their claims are deemed to be valid their causes of action lack a legal and/or factual foundation. Accordingly, plaintiffs, despite their protestations to the contrary, are really asking the court to review and reverse the DOI determinations that their mining claims are not null and void. *See Dawson v. United States,* 113 Ct.Cl. 82, 83–84, 81 F.Supp. 1021 (1949). Plaintiffs engage in verbal gymnastics in an effort to avoid this crucial conclusion, but these efforts produce more confusion than enlightenment.[5]

■ In *Freese v. United States, supra,* the United States Court of Claims held that DOI determinations that unpatented mining claims were null and void cannot be ignored by the Court of Claims. The Court of Claims stated in pertinent part:

Congress has chosen to place authority to review these decisions of the Secretary of the Interior in the United States District Courts. *See* Administrative Procedure Act, 5 U.S.C. §§ 701–06 (1976); *Patterson, [v. United States], supra* [115 Ct.Cl. 348], at 354. For this court to undertake a review of the validity of the claims declared void by the Interior Department would be to assume a function lodged

elsewhere by Congress and never contemplated for this court. [221 Ct.Cl. at 965.]

Since plaintiffs' causes of action are dependent on valid unpatented mining claims, and since this court has no jurisdiction to set aside the determinations of the DOI that said unpatented mining claims are null and void, the court lacks jurisdiction over plaintiffs' causes of action. *See also Patterson v. United States,* 115 Ct.Cl. 348, 353–54 (1950); *Dawson v. United States, supra,* 113 Ct.Cl. at 1022. This case is unlike *Foote Mineral Co. v. United States,* 228 Ct.Cl. ——, 654 F.2d 81 (1981) where, in dealing with mining leases, a refund statute was held to establish jurisdiction in the Court of Claims for those claiming entitlement to refunds of royalties previously paid. It is interesting to note that in the *Patterson* and *Dawson* cases there were allegations, like those made by plaintiffs herein, that the contests challenging the mining claims were based on bad faith and arbitrary action by agency officials.

■ Even if plaintiffs were entitled to challenge in this court the administrative determinations of DOI that their patented mining claims were null and void, their causes of action are barred by the statute of limitations, 28 U.S.C. § 2501, as amended. A claim accrues for statute of limitation purposes when all events have occurred which fix the liability of the United States to a claimant and which entitle the claimant to sue thereon. *Japanese War Notes Claimants Ass'n of Philippines, Inc. v. United States,* 178 Ct.Cl. 630, 373 F.2d 356 (1967), *cert. denied,* 389 U.S. 971, 88 S.Ct.

---

4. Plaintiffs' unsupported allegations of bad faith and arbitrary actions by agency officials are insufficient to overcome the well established presumption that public officials are presumed to act in good faith and are conscientiously proper in the discharge of their duties. *United States v. Chemical Foundation,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926); *Librach and Cutler v. United States,* 147 Ct.Cl. 605, 612 (1959). Indeed, it would take "well-nigh irrefragable proof" to overcome this presumption. *Knotts v. United States,* 128 Ct.Cl. 489, 492 (1954). The materials submitted by plaintiffs do not even suggest that plaintiffs' unsupported allegations have any reliable foundation worthy of further consideration.

5. Plaintiffs' complaint and briefs are not models of clarity and great difficulty has been encountered in trying to fathom plaintiffs' legal position. Materials proffered by plaintiffs seem to suggest that plaintiffs blame the DOI for not protecting them against the wrongdoing of Merle I. Zweifel, the "locator," who took plaintiffs' money but left them with null and void unpatented mining claims. Plaintiffs seem to feel that the government's failure to inform them of the "shady past" of Mr. Zweifel constituted bad faith and thus entitles them to a money judgment from the government. Plaintiffs' claims in this regard should be asserted against Mr. Zweifel and not against the DOI.

466, 19 L.Ed.2d 461 *rehearing denied,* 390 U.S. 975, 88 S.Ct. 1020, 19 L.Ed.2d 1192 (1978).

■ The complaint in this case was filed in the Court of Claims on December 2, 1981. The unpatented mining claims in issue were all declared null and void by final administrative determinations on or before November 7, 1975, and therefore plaintiffs' causes of action emanating directly from such determinations accrued for limitation purposes 6 years before suit was filed in the Court of Claims.[6]

In avoidance of the bar of the statute of limitations, plaintiffs' point out that in Colorado Contest No. 411, the Supreme Court denied certiorari on October 3, 1977 (434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95) thereby finalizing the DOI determination that unpatented mining claims of four of the plaintiffs (*see* note 2, *supra*) were null and void. Plaintiffs also point out that in Federal Civil Action No. 5784 District of Wyoming, which held that other unpatented mining claims were null and void, certiorari was denied on October 1, 1975 (423 U.S. 829, 96 S.Ct. 47, 46 L.Ed.2d 46) and a *rehearing*

denied on December 1, 1975. Plaintiffs argue that it was not until October 3, 1977 and December 1, 1975 that their causes of action in this case accrued for purposes of limitations. If the relief plaintiffs now seek in this court was available in the Court of Claims at the time their unpatented mining claims were declared null and void, then said relief now is barred by the statute of limitations. *See O'Callahan v. United States,* 196 Ct.Cl. 556, 563–64, 451 F.2d 1390, 1394 (1971).[7]

■ In summary, it is concluded that this court lacks jurisdiction to review and/or reverse the DOI determinations that plaintiffs' unpatented mining claims were null and void. *Freese v. United States, supra.* Since these determinations are the *sine quo non* for plaintiffs' causes of action, the complaint fails to state a cause of action on which relief can be granted. Even if the court were to conclude that it had jurisdiction to review DOI determinations that certain unpatented mining claims were null and void, the circumstances at hand lead to the conclusion that plaintiffs' claims are barred by the 6–year statute of limitations.

**6.** Plaintiffs' breach of contract claim rests on an opinion dated October 28, 1971 from the Solicitor to the Assistant Secretary, Public Land Management, Department of the Interior (DOI). In this opinion the Solicitor advised that DOI could lease competitively oil shale lands even where said lands were covered by unpatented mining claims. Implicit in this advisory opinion is the view that the unpatented mining claims mentioned therein were *valid* claims, not claims which were *null and void.* The Solicitor also voiced the opinion that revenues from oil shale leases could, *inter alia,* be held in trust until mining claimants were entitled to issuance of patents. Plaintiffs erroneously construe this advisory opinion by the Solicitor as a contract between plaintiffs and DOI. Plaintiffs claim the DOI breached this "contract" when DOI declared their claims null and void prior to December 2, 1975. Assuming such a contract, it was breached 6 years before plaintiffs sued in this court and thus is barred by limitations. Plaintiffs' inverse condemnation claim rests squarely on the determination by DOI prior to December 2, 1975, that plaintiffs' unpatented claims were null and void. These determinations are binding on plaintiffs. *Hanson v. United States,* 218 Ct.Cl. 705, 590 F.2d 343 (1978). Plaintiffs' claim for an

"accounting by trustee under common law public land trust" is beyond the pale of this court's jurisdiction. *Carney v. United States,* 199 Ct.Cl. 160, 163–64, 462 F.2d 1142, 1145 (1972). Plaintiffs claim for damages due to breach of fiduciary duty, bad faith and unfair dealings rests on plaintiffs disagreement with DOI's determination prior to December 2, 1975 that certain unpatented mining claims were null and void because, *inter alia,* claimants failed to establish that their claims related to valuable mineral deposits.

**7.** There is absolutely no merit to plaintiffs' contention that the statute of limitations should be tolled because the Secretary of the Interior concealed from plaintiffs the "shady" past of Mr. Zweifel. Plaintiffs dealt with Mr. Zweifel on their own. They paid him to locate claims for them. It was not until after the claims had been "located" by Mr. Zweifel and claim notices filed on plaintiffs' behalf by Mr. Zweifel that DOI would even know of plaintiffs' existence. On the basis of the materials at hand, there are no grounds for concluding that the Secretary concealed matters from plaintiffs which would justify tolling the statute of limitations.

### Res Judicata

Assuming, *arguendo,* that plaintiffs would be able to overcome the jurisdictional obstacles to litigation of their causes of action in this court, the doctrine of res judicata provides another barrier to plaintiffs' litigation efforts. In discussing the applicability of *res judicata* to the present case, it is deemed necessary to summarize as best one can the five causes of action plaintiffs set forth in their 84–page complaint. In their complaint, the main theme espoused by plaintiffs is that DOI acted wrongfully and unfairly in challenging the validity of plaintiffs, and numerous other, unpatented mining claims. It is to be remembered these claims were located by Merle I. Zweifel for plaintiffs, with compensation paid by plaintiffs to Mr. Zweifel for his "location" efforts.

Plaintiffs' first cause of action entitled "Damages Due to Breach of Contract" alleges that DOI "unilaterally agreed" to enter into a formal agreement with plaintiffs whereby any oil shale lease proceeds from the lands claimed by plaintiffs would be held in escrow until there was an " 'ultimate judicial determination' of the respective rights * * * " of those asserting unpatented mining claims (*see* note 6, *supra*). Plaintiffs allege that DOI breached this agreement by entering oil shale lease agreements covering the lands in question without first notifying plaintiffs, without tendering to plaintiffs a formal agreement regarding the claimed escrow agreement, and without putting the monies derived from said leasing efforts into escrow. Plaintiffs also make a series of allegations that the DOI, by initiating administrative and judicial challenges to the unpatented money claims in question, was scheming to deny the plaintiffs their "contract" rights, to nullify their rights in the unpatented mining claims, and to discredit, via a "public smear campaign," Merle I. Zweifel, the man who purportedly located the thousands of unpatented mining claims. Plaintiffs seek $1,346,390,400.00 in damages as a result of the claimed breach. It is clear that this cause of action rests squarely on the issue of whether plaintiffs had valid unpatented mining claims.

Plaintiffs' second cause of action, entitled "Damages Due to Breach of Fiduciary Duty, Bad Faith and Unfair Dealing," is a collection of various allegations that the government acted wrongly in its actions with respect to the mining lands in question. Plaintiffs allege that the DOI knowingly and falsely classified the mining claims in question as not "mineral in character" and contended, during the previous adjudications of plaintiffs' property interests, that there were "no known patented processes by which alumina and other minerals could be extracted from the Green River Host Rock" (marlestone), the soil involved. Plaintiffs further charge that the Secretary of DOI "failed in all respects" to exercise authority vested in him by not seeking annulment proceedings in all of the aforementioned actions filed by the DOI affecting plaintiffs' claims in the Green River area. Plaintiffs also claim that the DOI embarked on a course of conduct designed to ignore plaintiffs' rights and discredit efforts to perfect plaintiffs' mining claims. Finally, plaintiffs' claim that the DOI entered into a conspiracy with the major oil companies "to undermine the unquestional [sic] merits regarding the validity of Petitioners unpatented Dawsonite Mining claims." As a result, plaintiffs seek "$300,000,000,000.00 in damages, plus attorneys fees and costs. This second cause of action also rests squarely on the issue of whether plaintiffs' unpatented mining claims were valid or null and void.

In their third cause of action, plaintiffs allege that the lands in question were part of a "Public Common Land Trust" which imposed the following duties upon the government, all of which were breached: (a) a duty to carry out the directions of the trust, (b) a duty to use care and diligence in dealing with trust property, and (c) a duty to act in good faith at all times. Plaintiffs ask the court to determine appropriate damages for the breach of trust duty claim. Implicit in this articulation of their cause of action is the issue of whether plaintiffs'

unpatented mining claims were valid and thus gave rise to a trust situation.

In its fourth cause of action, plaintiffs allege inverse condemnation on the basis that the government "took" their property interests in the various mining claims, which plaintiffs contend were valid. Plaintiffs seek damages and an order directing the DOI to reinstate the mining claims. This cause of action rests squarely on the issue of the validity of plaintiffs unpatented mining claims.

In their fifth and final cause of action, entitled "Accounting By Trustee Under Common Law Public Trust," plaintiffs seek an accounting of government-held monies derived from oil shale leases of the lands in question, and a distribution of said monies to plaintiffs, as trust beneficiaries. This cause of action, it seems clear, bears directly on the issue of the validity of plaintiffs' mining claims.

The basic and necessary thread running through this garment of claims is the validity of the placer mining claims themselves. If these claims are deemed to be invalid, then the entire fabric of each of these five causes of action disintegrates and there can be no basis on which these claims can exist. Post administrative and/or judicial determinations have concluded that all of the placer mining claims in question were invalid. Plaintiffs, in essence, seek to relitigate those matters in this court. The question for consideration is whether they should be precluded by the doctrine of *res judicata* from doing so.

The aforementioned claims of plaintiffs must be barred pursuant to the doctrine of *res judicata,* which precludes relitigation between the same parties; or their privies, of the same claims. *Sterner v. United States,* 2 Cl.Ct. 253 (1983) (Wood, J.); 1B *J. W. Moore, Moore's Federal Practice,* ¶ 0.405 (1) (2d ed. 1982). Under the doctrine of *res judicata,* "a final decision on the merits of a claim bars a subsequent action on the same claim, or any part thereof, including issues which were not but could have been raised as part of the claim." *Schuster v. United States,* 1 Cl.Ct. 708, 710 (1983) (Wood,

J.), citing from *Hasson v. United States,* 220 Ct.Cl. 615, 618 F.2d 121 (1979) and *Container Transport Int'l, Inc. v. United States,* 199 Ct.Cl. 713, 717, 468 F.2d 926, 928 (1972). *See Lawlor v. National Screen Service,* 349 U.S. 322, 326–27, 75 S.Ct. 865, 867–68, 99 L.Ed. 1122 (1955); *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948).

For *res judicata* purposes, a "claim" has been defined " * * * to cover all the claimants' rights against the particular defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Container Transport Int'l, Inc. v. United States, supra,* 199 Ct.Cl. at 718, 468 F.2d at 929.

In this case it is agreed that the parties are the same. Thus, the only questions remaining, in determining whether *res judicata* serves as a bar to plaintiffs' claims, are whether the claims presented in the case are the same as those adjudicated in the prior actions; whether they are "part of" the claims previously litigated; or whether they include issues that were not but could have been raised as part of the prior claims. *See Container Transport Int'l, Inc. v. United States, supra.* Upon careful analysis of the claims and issues presented in the instant case, vis-a-vis the claims and issues presented in the prior adjudications, it is concluded that plaintiffs are seeking to relitigate the same claims and issues as before, namely, the validity of unpatented mining claims. In attacking the actions of DOI both administratively and by means of judicial review, the plaintiffs charged the government with wrongdoing and improprieties in connection with determining whether certain unpatented mining claims were valid or not. These charges were found to be without merit. In this case, plaintiffs again charge the government with wrongdoing relative to the validity of these very same unpatented mining claims. It may well be that plaintiffs have enlarged their wrongdoing charges to embrace some that were not presented previously, but the answer, if this is so, is a simple one. Plain-

tiffs could have and should have raised all their wrongdoing charges when they were litigating previously the validity of their unpatented mining claims administratively and on judicial review.

In all of the various administrative and judicial challenges brought by the government against each of the five classes of claimants, of which plaintiffs claim to be representative, decisions were entered declaring unpatented mining claims of plaintiffs to be invalid, and null and void.

In this case, plaintiffs seek to relitigate the validity of these unpatented mining claims and again charge DOI with wrongdoing in initiating challenges to the validity of these claims, issues that were litigated by plaintiffs' in prior adjudications. For example, plaintiffs in their first cause of action charge that DOI officials unlawfully challenged plaintiffs' claim rights as a scheme to make way for oil shale leasing rights in the area. This was a matter litigated previously. See *Roberts v. Morton, supra,* 389 F.Supp. at 94. As another example, plaintiffs in their second cause of action charge DOI with bad faith and unfair dealings with respect to mineral classification on the claimed land. Here again, this issue was given exhaustive consideration in the prior litigation. See *Roberts v. Morton, supra,* 549 F.2d at 162–63. As another example, plaintiffs charge DOI with a public smear campaign to discredit plaintiffs and their claims in their first and second causes of action. These matters were also covered in *Roberts v. Morton, supra,* 549 F.2d at 164.

In order for plaintiffs to recover on the causes of action, set forth in their complaint, plaintiffs would need to show that they, in fact, held valid unpatented mining claims. Without a showing that their unpatented mining claims are valid, plaintiffs have no viable causes of action. Thus, plaintiffs must, of necessity relitigate in this court the very issue they litigated previously if they hope to recover on the five causes of action asserted in their complaint.

Plaintiffs argue that the instant action does not present the same causes of action

as those previously litigated and, therefore, *res judicata* is inapplicable. Plaintiffs baldly assert that "the facts [in this case and in those previously litigated] are not sufficiently compatible in that the issues were not the same even though the parties were the same." Although plaintiffs have given titles to their causes of action and have varied somewhat the allegations of government wrongdoing, the fact remains that the basic issue in this case is the validity of plaintiffs' unpatented mining claims. That was the basic issue in the prior litigations as well. That is the crucial factor which justifies application of the bar of *res judicata* to further litigation in this case. For example, in the first cause of action, plaintiffs allege that DOI violated an agreement to hold lease proceeds from the lands in question until there was an ultimate judicial determination of the respective rights of the parties. Even assuming that the government failed to place said monies in escrow, plaintiffs have no breach of contract claim against the government given the conclusive determinations that plaintiffs had no rights in the lands in question and, thus, have suffered no loss. It is therefore clear that relitigating the validity of the unpatented mining claims is the heart and soul of plaintiffs' breach of contract claim in this case. That issue, however, was previously litigated by plaintiffs. They are not entitled to litigate that issue again.

 Similarly, plaintiffs' remaining four causes of action all require relitigation of the validity of the unpatented mining claims. In order to show breach of fiduciary duty, bad faith, and unfair dealing by the government in challenging plaintiffs' asserted mining claims, plaintiffs would need to show that such alleged wrongdoing deprived them of their rights to *valid* mining claims. See *Roberts v. Morton, supra.* In order to show that the government breached its duties as trustee of the "Public Common Land Trust," involving the lands in question, plaintiffs would need to prove that they were, in fact, beneficiaries of such a trust, that is, holders of *valid* mining

claims in the lands making up the trust res. To recover on the basis of inverse condemnation, plaintiffs must show that they held *valid* property interests in the lands in question. Lastly, in order to obtain an accounting of oil shale lease monies derived from the lands in question, plaintiffs would again need to show that they were trust beneficiaries in that they possessed *valid* property interests in the lands. It seems clear that plaintiffs are attempting to relitigate claims and issues that have already been litigated and decided. Under the doctrine of *res judicata* such relitigation of claims which were finally decided previously between the same parties is prohibited. *See Sterner v. United States, supra.*

■ Assuming as a fact that plaintiffs in their complaint raise new issues of government wrongdoing in initiating challenges to plaintiffs asserted unpatented mining claims, this fact alone does not preclude the application of *res judicata* as a bar to such claims. Under the doctrine of *res judicata,* not only does a final decision on the merits bar a subsequent action on the same claim, it also precludes subsequent actions based on a part of the same claim or any issues which were not but could have been raised as part of the claim. *See Schuster v. United States, supra; Hasson v. United States, supra.* A claim in this context encompasses all of the rights against a party with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. *See Container Transport Int'l v. United States, supra.*

■ Here, plaintiffs' various allegations of government wrongdoing are "part of the same claim." The contention is that plaintiffs held valid unpatented mining claims. Variations on these allegations of wrongdoing simply embellish the identical claim, litigated previously, that plaintiffs were deprived of their *valid property* interests as the result of government wrongdoing, bad faith, and conspiracy. *See Roberts v. Morton, supra,* 549 F.2d at 164; 389 F.Supp. at 94. Any such wrongdoing committed by the government in the determination of plaintiffs' asserted property interests is clearly and directly related to, and connected with, plaintiff's claim to valid unpatented mining rights. These questions of wrongdoing, if they were not raised previously, not only could have, but should have been raised in the prior adjudications of plaintiffs' rights. Plaintiffs, therefore, are barred from raising such issues in this subsequent action. *See Cohen v. United States,* 2 Cl.Ct. 181 (1983) (MAYER, J.); *Lyle v. United States,* 2 Cl.Ct. 250 (1983) (WOOD, J.); *Schuster v. United States,* 1 Cl.Ct. 708 (1983) (WOOD, J.); *Hasson v. United States, supra; Oglethorpe v. United States,* 214 Ct.Cl. 551, 557, 558 F.2d 590, 594 (1977); *Container Transport Int'l v. United States, supra.*

The result reached herein comports with the policy behind the doctrine of *res judicata* as enunciated by the United States Supreme Court. Application of the doctrine to the facts in this case: (1) ensures the finality of decisions; (2) prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding; (3) encourages reliance on judicial decisions; (4) bars vexatious litigation; and (5) frees the courts to resolve other disputes. *See Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Chicot County Drainage Dist. v. Baxter State Park,* 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940); 1 B *J. Moore, Moore's Federal Practice,* ¶ 0.405[1] (2d ed. 1982). This is especially true in this case where thousands of unpatented mining claim disputes were resolved by prior administrative and/or judicial determinations and plaintiffs now seek to relitigate those same basic mining claim disputes that had previously been determined in prior litigation between the same parties.

In its motion for summary judgment, defendant notes that as to claimant classes (a) (b) (d) and (e) (*see* pp. 629–631, *supra* )

the administrative determinations that plaintiffs' unpatented mining claims were null and void were upheld on judicial review of said determinations. Defendant asserts that *res judicata* clearly bars these claims from being relitigated. As to claimant class (c) (*see* pp. 631–632, *supra*), no judicial review of the DOI determination that unpatented mining claims were null and void was sought by claimants thus finalizing the administrative determination. Defendant suggests that, under the particular circumstances of that administrative proceeding, said decision should have a *stare decisis* effect. Plaintiffs counter that *stare decisis* has no binding effect relative to an administrative decision. The parties quibble about the role of *stare decisis* in this regard, but their discussion of the matter is confusing and unclear. The court cannot, on the basis of the presentations of the parties assign any role to the concept of *stare decisis* in this case.

■ A question raised by the failure of plaintiffs to seek judicial review of the administrative determination as to class (c) claimants is whether *res judicata* is applicable relative to a final administrative determination. Both the facts and applicable law support the conclusion that the administrative determination as to class (c) claimants Utah Contest No. 10700 be treated as a final one for purposes of *res judicata* applicability.

First, the facts clearly show that it was the plaintiffs' failure to pursue their appeal from the ALJ's decision, and their failure to seek judicial review thereof, that resulted in the ALJ's decision being final. Claimants in class (c) did not submit the required statement of reasons with their notice of appeal to the IBLA pursuant to applicable regulations, and without any further action whatsoever, simply failed to exhaust their administrative remedies. Thus, plaintiffs can only blame themselves for the lack of a judicial ruling on the matter. There is no question but that the ALJ was acting in a judicial capacity on the matter. *See Roberts v. Morton, supra,* 549 F.2d at 159–164,

389 F.Supp. at 89–94. These facts support *res judicata* applicability.

Second, in *United States v. Utah Constr. Co.,* 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966) the Supreme Court held in pertinent part:

When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose. *Sunshine Coal Co. v. Adkins,* 310 U.S. 381 [60 S.Ct. 907, 84 L.Ed. 1263]; *Hanover Bank v. United States,* 152 Ct.Cl. 391, 285 F.2d 455; *Fairmont Aluminum Co. v. Commissioner,* 222 F.2d 622 [4th Cir.1955]; *Seatrain Lines, Inc. v. Pennsylvania R. Co.,* 207 F.2d 255 [3rd Cir.1953].

In this case, as in the *Utah Constr. Co.* case, *supra,* the administrative agency was acting in a judicial capacity when it considered the validity of the claimants unpatented mining claims. The factual questions resolved by the administrative agency were clearly relevant to the dispute properly before it. Moreover, both parties had a full and fair opportunity to argue their version of any facts and to pursue further administrative and judicial review of any adverse findings. Indeed, here the plaintiffs' own failure to take the necessary steps for an appeal to the IBLA suggests that they themselves treated the ALJ's decision as a final one. "There is, therefore, neither need nor justification for a second evidentiary hearing on these matters already resolved as between these two parties." *United States v. Utah Constr. Co., supra,* 384 U.S. at 422, 86 S.Ct. at 1560.

■ In addition, even without the bar of *res judicata* class (c) claimants are precluded from relitigating the validity of their mining claims in this court because they failed to exhaust their administrative remedies for reviewing adverse decisions by the governing administrative agency. *See e.g., ABC Cleaning Service v. United States,* 224 Ct.Cl. 630, 631, 650 F.2d 287 (1980); *Peters v. United States,* 208 Ct.Cl. 373, 377, 534

F.2d 232, 235 (1975). Given plaintiffs' abandonment of its appeal rights, there are clearly no unusual circumstances that exist to make application of the doctrine unjust in this case and there is no indication that pursuit of administrative appeals in *Utah Contest No. 10700* would have been utterly futile, nor do plaintiffs argue otherwise. *Compare Bendure, v. United States,* 213 Ct.Cl. 633, 640–41, 554 F.2d 427, 431 (1977). Plaintiffs do not designate in their complaint or in their cross-motion for summary judgment which of the seven plaintiffs represent the class (c) claimants.

### III.

### *Equitable Estoppel and Fraud Upon The Court*

Plaintiffs' basic response to the defenses raised by defendant and discussed, *supra,* is that the government should be estopped from raising said defenses. Further, in its reply brief plaintiffs seem to suggest that the government committed "Fraud upon the Court," presumably the District Courts in Colorado and Wyoming and the Tenth Circuit Court of Appeals (*see* pp. 629–631, *supra*), and that this alleged "fraud" should also be considered as additional support for plaintiffs' contention that defendant should be estopped from asserting any defenses to plaintiffs' claims herein.

■ Two of the government's defenses to this action are jurisdictional, RUSCC 12(h)(3) provides: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." As indicated above, the government's reliance on *Freese v. United States, supra,* and the statute of limitations (which is clearly a jurisdictional defense—*see O'Callahan v. United States, supra,* 196 Ct.Cl. at 564, 451 F.2d at 1394), raise jurisdictional matters which are beyond the pale of equitable estoppel as asserted by plaintiffs. Even if defendant were estopped from raising these jurisdictional defenses, the court can raise these matters *sua sponte. See Hydaburg Cooperative Assoc. v. United States,* 229 Ct.Cl. ——, 667 F.2d 64, 66

(1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 207, 74 L.Ed.2d 166.

■ As to the defense of *res judicata,* the court again is not prohibited from *sua sponte* considering this defense even if defendant's actions might otherwise estop it from raising the matter. The policy reasons underscoring application of the doctrine of *res judicata* should not be thwarted by actions of one or both parties without the most compelling of circumstances. Such compelling circumstances are lacking here.

■ Plaintiffs' basis for asserting equitable estoppel against defendant seems to rest on plaintiffs' contention that "government mischief and bureaucratic breaches" were responsible for their woes in connection with the determinations that their unpatented mining claims were null and void. A number of these contentions were raised in the administrative and judicial determinations relative to the validity of their unpatented mining claims and were found to be without merit. *See Roberts v. Morton, supra,* 549 F.2d at 162–63 and 389 F.Supp. at 94. Plaintiffs continue their attack on the integrity and good faith of DOI officials in their submissions to this court. As indicated previously, the materials proffered by plaintiffs in support of these attacks fail to overcome the presumption that public officials perform their duties with integrity and good faith. *See* note 4, *supra.* Such attacks failed to impress the courts in *Roberts v. Morton, supra,* and they fail to impress this court. As a result, equitable estoppel against the government is neither justified by plaintiffs nor warranted by the materials at hand. Equity and fair dealing support this conclusion. *See Russell Corp. v. United States,* 210 Ct.Cl. 596, 613–14, 537 F.2d 474, 484–85 (1976).

While it is difficult to piece together the basis of plaintiffs' equitable estoppel argument, it would appear that it is based on alleged misrepresentations and concealment of material facts by DOI officials which were allegedly relied on by plaintiffs to their detriment. The misrepresentations

ostensibly revolve around differences of opinion as to what constitutes "valuable mineral deposits" and were matters which were fully ventilated in the prior administrative and judicial proceedings. *See Roberts v. Morton, supra,* 549 F.2d at 162–63 and 389 F.Supp. at 90–92. There were no representations by DOI officials to plaintiffs relative to mineral deposits on the land in question and plaintiffs do not cite any such representations. There is no basis for plaintiffs' charge of misrepresentations by DOI officials. Plaintiffs concealment allegation centers on the activities of Merle I. Zweifel. There is absolutely no merit to this allegation. *See* note 5, *supra.*

■ Plaintiffs have the burden of establishing that all the elements of estoppel are present. *Foote Mineral Co. v. United States, supra,* 228 Ct.Cl. at 236, 654 F.2d at 86. Plaintiffs have failed to establish at least one of the four elements necessary to support an estoppel claim. Plaintiffs have not established that defendant intended that its conduct should be acted on or that defendant acted in a manner the plaintiffs had a right to believe defendant intended that plaintiffs act on such conduct. *Singer Co. v. United States,* 217 Ct.Cl. 225, 246, 576 F.2d 905, 917 (1978). Plaintiffs seem to suggest that they would not have dealt with Mr. Zweifel as a "locator" had the government warned them beforehand of his "shady" past. Since government agencies had information on Mr. Zweifel, which indicated a "shady" past, plaintiffs argue, DOI or other government agencies were obligated to notify the world in general and plaintiffs in particular of the dangers of dealing with him. Such "concealment" is not the type of conduct defendant intended plaintiffs to act on. In business dealings plaintiffs have the responsibility to ascertain the integrity and character of those with whom they enter into business or investment relationships. They cannot, as a general rule, pass this responsibility on to the government. Plaintiffs had no right to rely on the government to notify or warn them that dealing with Mr. Zweifel might be harmful to their pocketbooks.

■ As for plaintiffs' "Fraud Upon The Court" suggestion, it is sufficient to note that this court does not have jurisdiction to relieve plaintiffs of the judgments of the District Courts of Colorado and Wyoming or the holding of the Tenth Circuit Court of Appeals, *supra (see* pp. 629–631) for fraud upon the court. *See Carney v. United States, supra,* 199 Ct.Cl. 160, 162–65, 462 F.2d 1142, 1144–45 (1972). Therefore, *Bulloch v. United States,* 95 F.R.D. 123 (1982), and *Wilkin v. Sunbeam Corp.,* 466 F.2d 714 (10th Cir.1972), cited by plaintiffs, are inapposite.

## IV.

For reasons discussed above, defendant's motion for summary judgment is granted, plaintiffs' cross-motion for summary judgment is denied, with the complaint to be dismissed.