**HALIFAX ENGINEERING, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

No. 89–1723.

United States Court of Appeals, Federal Circuit.

Oct. 2, 1990.

Wyatt B. Durrette, Jr., Durrette, Irvin & Lemons, P.C., Richmond, Va., argued, for appellant. With him on the brief was Bradley B. Cavedo.

Lois P. Murphy, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for appellee. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, and Helene M. Goldberg, Asst. Director. Also on the brief was Jerome M. Drummond, Office of Gen. Counsel, Gen. Services Admin., Washington, D.C., of counsel.

Before ARCHER and MAYER, Circuit Judges, and WEIGEL, District Judge.[*]

WEIGEL, District Judge.

Halifax Engineering, Inc. (Halifax) appeals a decision of the General Services Board of Contract Appeals (board), GSBCA No. 8173 (May 22, 1989). The board upheld a contracting officer's decision to terminate for default Halifax's contract to provide

---

[*] District Judge Stanley A. Weigel of the United States District Court for the Northern District of California, sitting by designation.

security guard services at the United States Department of State. We affirm.

### Facts and Proceedings Below

On January 22, 1985, Halifax was awarded contract number GS–11–C–40212 to provide security guard services at the main Department of State building and six annexes. Halifax was required to begin performance on June 1, 1985. Under the terms of the contract's default provision, the government could terminate for default prior to the contract start date if it provided Halifax with a cure notice identifying the deficiencies it believed endangered Halifax's ability to begin performance and allowed Halifax a minimum of ten days in which to cure those deficiencies.[1]

Halifax experienced difficulty in establishing an adequate radio network and in qualifying a sufficient number of personnel to staff the guard-posts at the State Department.[2] By telegram dated May 31, 1985, the government notified Halifax that it considered Halifax unable to meet the contract requirements and thus to be in default. The government requested that Halifax "show just cause as to why your contract should not be terminated and show that you can start service in ten days."

In response to proposals by Halifax, by letter dated June 6, 1985, the government informed Halifax that it had decided not to terminate the contract for default. The government set a new contract start date of July 1, 1985, and stated:

> You are hereby notified that failure to start performance or be adequately prepared to start performance on July 1, 1985, will be grounds for immediate termination for default. No further cure notices or show cause notices will be issued.

On June 21, 1985, Halifax's radio network was tested and proved inadequate. During subsequent tests on June 24 and June 26,

1985, the radio network still failed to function properly. On June 26, 1985, the government terminated the contract based on Halifax's failure to make progress and inability to be prepared to commence performance on the new contract start date.

On appeal, the Board of Contract Appeals determined that the June 6, 1985, letter constituted a cure notice. The board further found that, as of June 26, 1985, Halifax was inadequately prepared to begin performance on July 1, 1985. Therefore, the board upheld the termination for default.

### Discussion

Halifax argues that the June 6, 1985 letter was not a proper cure notice and, therefore, that it was not properly terminated for default prior to the new contract start date. As quoted above, the letter provided:

> You are hereby notified that failure to start performance or be adequately prepared to start performance on July 1, 1985, will be grounds for immediate termination for default. No further cure notices or show cause notices will be issued.

The board interpreted this language to mean that failure to start performance on July 1, 1985, or failure to be adequately prepared prior to July 1, 1985 to start performance on July 1, 1985, would be grounds for termination for default.

"Contract interpretation is a question of law, and thus the Board's interpretation is not final, although it is afforded careful consideration and great respect." *Alvin, Ltd. v. United States Postal Serv.*, 816 F.2d 1562, 1564 (Fed.Cir.1987). Here, the board's interpretation of the letter as a cure notice makes sense. As the board observed, the letter "was obviously intended to be a cure notice, else why the statement, 'No further cure notices ... will be

---

1. The contract's default clause is identical to the Federal Acquisition Regulation set forth at 48 C.F.R. Section 52.249–8 (1984).

2. The contract required Halifax to perform guard services for a specified number of man-

hours at designated posts in the State Department buildings, and to have a functioning radio network in place to enable the guards to communicate between posts.

sent.'" GSBCA No. 8173 at 8. Further, the phrase "or be adequately prepared to start performance on July 1, 1985" must refer to a point in time prior to July 1 since Halifax was already contractually required actually to start performance on July 1. In contrast, Halifax's proposed interpretation of the letter—that failure to start performance on July 1, 1985, or failure to be adequately prepared on July 1, 1985 to start performance on July 1, 1985, would be grounds for default—makes little sense.

■ Halifax contends that even if the letter is interpreted as a cure notice it is legally inadequate because it fails to specify the cure period. Nothing in the contract default clause, however, requires that the notice specify the cure period. The contract only requires that the government allow Halifax ten days from receipt of the notice to cure deficiencies. Halifax does not contend that less than ten days passed from its receipt of the June 6, 1985 letter to the date it was terminated.

Halifax also contends that the letter is legally inadequate because it fails to specify the defects that formed the basis for the default. The record establishes that the government on numerous occasions, including during meetings on June 4, 5 and 6, informed Halifax that in the government's view Halifax's failure to get its radio network to function and its failure to qualify an adequate number of personnel were endangering its ability to perform the contract. Therefore, Halifax had sufficient notice of the asserted defects. *See American Marine Upholstery Co. v. United States*, 170 Ct.Cl. 564, 345 F.2d 577, 581 (1965).

■ Finally, Halifax challenges the board's finding that as of June 26, 1985, the date it was terminated, Halifax was not adequately prepared to start performance on July 1, 1985, the contract start date. Specifically, Halifax challenges the board's finding that it was inadequately prepared because its radio equipment still did not function properly and it did not have a sufficient number of qualified personnel to perform its contractual obligations.

Decisions of the board on questions of fact shall not be set aside unless fraudulent, arbitrary, capricious, grossly erroneous, or not supported by substantial evidence. 41 U.S.C. § 609(b). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mayfair Constr. Co. v. United States*, 841 F.2d 1576, 1577–78 (Fed.Cir.) (citations omitted), *cert. denied*, 488 U.S. 980, 109 S.Ct. 528, 102 L.Ed.2d 560 (1988). Here, the record provides substantial evidence to support the board's finding. Moreover, there is nothing in the record to suggest that the board's finding was fraudulent, arbitrary, capricious, or grossly erroneous. The contract required Halifax to have a functioning radio network. Halifax had been attempting unsuccessfully for months to create such a radio network. Its radio network was tested on June 21, 24 and 26, and failed each test. Further, as of June 26, Halifax still did not have a sufficient number of qualified guards to perform the contract. Halifax contends that it could have hired sufficient guards from the outgoing contractor to make up the deficiency. However, based on Halifax's shortcomings prior to June 26, it was reasonable for the board to conclude that Halifax was incapable of correcting its deficiencies in the short time remaining before performance was to begin on July 1, 1985.

Accordingly, we affirm the final decision of the General Services Administration Board of Contract Appeals.

AFFIRMED.