McCALL STOCK FARMS, INC., Plaintiff–Appellant,

v.

The UNITED STATES, Defendant–Appellee.

No. 93–5077.

United States Court of Appeals, Federal Circuit.

Dec. 23, 1993.

Frederick B. Anderson, West Des Moines, IA, argued for plaintiff-appellant.

Mark D. Rubino, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for defendant-appellee. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director and Sharon Y. Eubanks, Asst. Director.

Before NIES, Chief Judge, CLEVENGER and SCHALL, Circuit Judges.

CLEVENGER, Circuit Judge.

McCall Stock Farms, Inc., (MSFI) appeals the decision of the United States Court of Federal Claims, 30 Fed.Cl. 248 No. 90–1003C (Dec. 10, 1992), granting summary judgment for the government. Because MSFI has demonstrated no error in that decision, we affirm.

I

In 1978, John R. and Phyllis A. McCall, sole proprietors of McCall Farms and McCall Stock Farm, as joint obligors, obtained a $170,000 farm disaster loan from the Small Business Administration (SBA). The SBA's loan was secured by a second mortgage on 800 acres of the McCalls' land in Madison County, Iowa. In 1983, MSFI was incorporated under the laws of Iowa in order to provide an estate planning vehicle for the transfer of assets to the McCalls' children, John L. and Mary Lynn. MSFI leased lands owned by the parents, including part of the mortgaged land, and other lands owned by the children. The McCalls' family farm business thereafter was conducted under the name of MSFI. In 1984, the Department of Agriculture began making payments to the McCalls under various crop support contracts administered by the Agricultural Stabilization and Conservation Service (ASCS). Under some of the contracts, all the checks were made payable to MSFI. Under others, seventy-five percent went to MSFI and twenty-five percent went to John senior, directly reflecting the profit-sharing arrangement between him and his tenant, MSFI.

The senior McCalls defaulted on their borrowing from the SBA in January 1985. In 1987, the SBA learned that John R. McCall was entitled to payments from the ASCS. Consequently, on July 14, 1987, the SBA loan officer concerned with the outstanding McCall debt wrote to the Administrator of the ASCS, requesting under the Debt Collec-

tion Act of 1982, 31 U.S.C. § 3716 (1988), that the ASCS offset any payments due to Mr. and Mrs. McCall, McCall Farms, or McCall Stock Farm (SBA's borrowers of record) against the outstanding debt to the SBA.

■ On December 16, 1987, the SBA loan officer sent McCall Stock Farms, Inc., and John R. and Phyllis A. McCall a letter by certified mail entitled "NOTICE OF INTENT TO COLLECT BY ADMINISTRATIVE OFFSET OF ASCS PAYMENTS." That letter, the receipt of which was duly acknowledged, also in writing, detailed with precision the amounts the McCalls owed to the SBA, stated the SBA's intent to begin offsetting the ASCS payments and advised the McCalls of their right to obtain an administrative review of that action. The December 16 letter is addressed jointly to MSFI and Mr. and Mrs. McCall. In the body of the letter the joint addressees are collectively referred to as "you."[1] The McCalls chose not to seek such a review. The ASCS, after another written request by the SBA naming MSFI and Mr. and Mrs. McCall as its debtors,[2] began in June of 1988 to offset the payments to MSFI and John senior, forwarding the money to the SBA.[3]

The SBA proceeded on two alternative but complementary theories. One was that Mr. and Mrs. McCall, as landlords of MSFI, were the "ultimate recipients" of the ASCS payments made to MSFI. Letter from Christy Grundberg, SBA Attorney, to Jonathan M. Kimple, MSFI Attorney 1 (Aug. 2, 1988).

The second was that MSFI was in substance and in equity the alter ego of Mr. and Mrs. McCall and thus liable for their debts under "the equitable principal [sic] of piercing the corporate veil." *Id.*

During the time the offsets were being made, much correspondence passed between the SBA and the McCalls' attorneys, who disagreed with SBA's contention that MSFI was but the alter ego of Mr. and Mrs. McCall and thus liable for their personal debt to the SBA. The McCalls' SBA loan was paid in full on January 23, 1989 as a result of the offset of the ASCS payments.

MSFI brought suit in the Court of Federal Claims on October 15, 1990, seeking a refund of all the ASCS payments to MSFI that the SBA had offset to satisfy the McCalls' debt.

## II

■ The Debt Collection Act authorizes administrative offsets where feasible to collect debts owed to the United States by any "person." 31 U.S.C. § 3716(a). The statute does not, however, define the term "person" and is therefore silent on the question whether the statute applies to a person's "other self." *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). Congress expressly required federal agencies to prescribe regulations to implement the debt collection statutes, *see* 31 U.S.C. § 3716(b), and thus vested such agencies with general interpretive authority over

1. The letter complied with each of the specific notice requirements set forth in the Debt Collection Act, 31 U.S.C. § 3716(a) (1988), and in the regulations promulgated under § 3716(b), pursuant to which SBA effects administrative offsets. *See* 13 C.F.R. § 140.5 (1993). In particular, the letter specified the type and the amount of the claim, the intention of SBA to collect it through administrative offset, and the rights of the debtor under the statute and regulations to: Inspect and copy SBA's records related to the claim; a review within the agency of the agency's decision related to the claim; and to make a written agreement with SBA to repay the amount of the claim.

2. In this request, dated January 18, 1988, SBA certified to ASCS that MSFI owed the amount to be offset and that all statutory and regulatory prerequisites for implementation of an adminis-

trative offset had been met. In particular, SBA stated that "SBA has exhausted all other resources available to it in an attempt to collect this debt."

3. After examining MSFI's corporate records, the SBA discovered that MSFI was merely an "operating company" rather than a typical profit-making and dividend-paying enterprise. Because the McCall children held title to some of the tracts leased to MSFI, the SBA properly could offset only that percentage of the ASCS checks "drawn on" tracts titled in the names of Mr. or Mrs. McCall, or checks made payable to John senior. While the SBA completely offset all of the ASCS checks, it eventually refunded about $6,000 to MSFI, an amount proportionate to the children's interest in the lands covered by the ASCS contracts.

the subject, *see Martin v. Occupational Safety & Health Review Comm'n,* 499 U.S. 144, 154, 111 S.Ct. 1171, 1177, 113 L.Ed.2d 117 (1991). The General Accounting Office (GAO) and the Department of Justice (DOJ) promulgated a regulation to serve as a general guideline to all federal agencies, who in turn were encouraged in their own required regulations to promulgate more detailed procedures "tailored to meet the needs and experiences of particular programs and activities." Federal Claim Collection Standards, 49 Fed.Reg. 8889, 8889 (1984) (final rule) (codified at 4 C.F.R. §§ 102–105 (1993)). Both the SBA and the ASCS have promulgated agency-specific administrative offset regulations. *See* 13 C.F.R. § 140.5 (1993); 7 C.F.R. pt. 1408 (1988) (redesignated as amended at 7 C.F.R. pt. 1403 (1993)).

■ Given the longstanding existence of the alter ego doctrine as a means to achieve fundamental fairness in particular fact circumstances, the SBA's practical construction of the word "person" as including alter egos is reasonable and within the range of permissible interpretations. *See id.; see also United States v. Midwest Oil Co.,* 236 U.S. 459, 472–73, 35 S.Ct. 309, 312–13, 59 L.Ed. 673 (1915). Moreover, the SBA in this case also relied on a regulation promulgated by the Department of Agriculture that authorizes the use of administrative offsets against persons or entities different from the named individual debtors. *See* Letter from Christy Grundberg, Small Bus. Admin., to Jonathan M. Kimple re: John R. and Phyllis A. McCall (Feb. 3, 1988) ("Further[,] ASCS federal regulations provide that if the true ownership of the inventory remains the same then Administrative offset will be allowed against the newly created entity.").

The Department of Agriculture regulation (USDA) cited by SBA to the McCalls first provides generally for offsets (at the request of either USDA components or other federal agencies) and then, in a section headed "Debtors operating under more than one name," authorizes offsets "against amounts payable to a debtor who operates businesses under more than one name, provided there is identical ownership." 7 C.F.R. § 1408.16 (1988) (redesignated as amended at 7 C.F.R.

§ 1403.7(q) (1993)); *see also* 54 Fed.Reg. 52,-876 (1989) (Agricultural Stab. & Conserv. Serv., Commodity Credit Corp. (CCC) final rule), *amending and redesignating* 7 C.F.R. § 1408.16 (1988) pursuant to The Federal Claims Collection Act, *as amended by* The Debt Collection Act of 1982, 31 U.S.C. §§ 3711–3719 (1988) (authorizing offsets "against amounts payable to a debtor who operates businesses under more than one name, provided there is identical ownership, *or CCC determines that the debtor has established an entity for the purpose of avoiding the payment of the claim or debt.*") (emphasis added); *cf. id.* at 52,876 (among the purposes of the rule is to prevent the "circumvention of offset by such practices as the assignment of payments to friends, relatives, partners, or subsidiary corporations, as well as increase the ability of CCC and ASCS to recoup delinquent debts.").

■ Finally, it must be emphasized that the Debt Collection Act was intended to supplement, and not displace, the government's pre-existing offset rights under the common law. *See* General Accounting Office, Federal Claims Collection Standards, 49 Fed.Reg. 8891 (1984) (final rule). The alter ego doctrine was firmly established in common law jurisprudence before enactment of the Debt Collection Act. The discretionary nature of the power so clearly conferred upon agencies to effect offsets in pursuing federal fiscal interests lends itself to the incorporation of the *ad hoc,* substance-over-form analysis underlying the determination in any particular case to employ the alter ego doctrine when implementing an administrative offset. *See id.* at 8898 (codified at 7 C.F.R. § 102.3) ("... determination [to offset is] to be made on a case-by-case basis, in the exercise of sound discretion. Agencies ... consider not only whether administrative offset can be accomplished, both practically *and legally,* but also whether offset is best suited to further and protect all of the Government's interests.") (emphasis added).

■ Certainly in these particular circumstances, we will not challenge SBA's administrative interpretation of the Debt Collection Act to permit invocation of the alter ego doctrine in aid of the administrative offsets

challenged by the McCalls. Since the agency interpretation did not go so far as to articulate a specific test for determining alter ego status, however, the judicial review to which the SBA's determination is subject is governed by the applicable common law test.

### III

■ Our review of the judgment of the Court of Federal Claims that an evidentiary record raises no genuine issues of material fact is of course plenary. *See, e.g., Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 954 (Fed.Cir.1987); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). In this case, there are no factual disputes between the

parties and no conflicting evidence in the record. The only questions before this court are (1) whether the SBA's application of the alter ego doctrine, as enunciated in *United States v. Pisani*, 646 F.2d 83 (3d Cir.1981), and *Lakota Girl Scout Council, Inc. v. Havey Fund–Raising Management, Inc.*, 519 F.2d 634 (8th Cir.1975), to the facts of this case was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,[4] and (2) whether the SBA observed the procedure required by law by providing MSFI with adequate notice of the agency's intent to offset the payments by ASCS to MSFI.[5] *See Foote Mineral Co. v. United States*, 654 F.2d 81, 85, 228 Ct.Cl. 230 (1981) (the ordinary standards of review of agency

4. In circumstances where a court is called upon to pierce a corporate veil in the first instance, rather than to review an agency's use of the doctrine to achieve statutory objectives, there is a division of opinion about the precise nature of such judicial action and, as a result, the proper standard of appellate review. It is generally recognized that disregarding the legal separateness of a corporation and the individuals who control it entails the exercise of equitable power. *See* 1 William M. Fletcher, Cyclopedia of the Law of Private Corporations § 41.25 (rev. ed. 1990 & Supp.1992); *see, e.g., First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 629, 103 S.Ct. 2591, 2601, 77 L.Ed.2d 46 (1983); *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1350–51 (2d Cir.), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974). This view reflects the classical conception of equity's function, even in a merged procedural system, of relieving individuals from the operation of a generally just legal rule to prevent a particularized injustice that the framers of the rule cannot be presumed to have intended. *See, e.g., First National City Bank*, 462 U.S. at 629, 103 S.Ct. at 2601; 1 William S. Blackstone, Commentaries on the Laws of England 61 (1765) (citing Grotius); 3 *id.* at 429–32, 103 S.Ct. at 2492–94. Because of its discretionary and *ad hoc* nature, *see* Henry L. McClintock, Handbook of the Principles of Equity 2, 49, 51 (1948), equitable dispensations traditionally have been reviewed on appeal under an abuse of discretion standard, *Brotherhood of Locomotive Eng'rs v. M.–K.–T.R. Co.*, 363 U.S. 528, 535, 80 S.Ct. 1326, 1330, 4 L.Ed.2d 1379 (1960); *see, e.g., Consumer's Co-op. v. Olsen*, 142 Wis.2d 465, 419 N.W.2d 211, 213 (1988); *cf. Lakota*, 519 F.2d at 638 & n. 4.

On the other hand, some courts treat the alter ego determination as a question of fact reviewed under the "clearly erroneous" standard, *see, e.g., United States v. Jon–T Chems., Inc.*, 768 F.2d 686, 694 (5th Cir.1985), and the ultimate decision to pierce the corporate veil as a conclusion of law,

albeit one that follows almost automatically from the ultimate factual finding concerning alter ego status, subject to *de novo* review. *See* 1 Fletcher, *supra*, § 41.95. This approach is consistent with the view that the doctrine has been fully absorbed into the law itself, thus constituting an exception to, rather than a suspension of, the legal rule of corporate separateness. *See generally Piper Aircraft Corp. v. Wag–Aero, Inc.*, 741 F.2d 925, 937, 939 (7th Cir.1984) (Posner, J., concurring).

Because this case does not involve veil-piercing by the Court of Federal Claims, assuming the doctrine is equitable in some sense, we need not decide today whether that Article I court has jurisdiction itself to engage in veil-piercing, even if done in aid of its unquestionable jurisdiction to hear money claims against the United States. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 847–59, 106 S.Ct. 3245, 3254–61, 92 L.Ed.2d 675 (1986) (setting out constitutional test for congressional investitures of various elements of judicial power in non-Article III tribunals); *cf. Pauley Petro. Inc. v. United States*, 591 F.2d 1308, 1315, 219 Ct.Cl. 24 (1979) (Court of Claims may employ substantive equitable doctrines incidentally to its adjudication of claims seeking monetary relief); Act of March 13, 1915, ch. 90, § 274b, 38 Stat. 956 (recognizing certain equitable actions as defenses at law). We also need not decide what standard of review this court would apply to review a judgment of the Court of Federal Claims piercing the corporate veil.

5. MSFI also urges that the government should be estopped from asserting the alter ego doctrine because it also claimed entitlement to offset payments to MSFI on the theory that the McCall debtors were the ultimate recipients of sums payable by ASCS to MSFI. This argument lacks merit. Nothing precludes a party from advancing alternative theories to defend challenged conduct.

**1568**

action, reflected in the Administrative Procedure Act, 5 U.S.C. § 706(2) (1988), govern judicial review of agency action in the Court of Claims); *Heinemann v. United States,* 796 F.2d 451, 454–55 (Fed.Cir.1986) (Federal Circuit and Court of Federal Claims both employ these same standards in reviewing agency action).

MSFI first argues that the corporate veil may not be pierced in "reverse" (i.e., to reach the assets of a *corporation* deemed to be the alter ego of an *individual* debtor) or, at least, may not be so pierced in the absence of fraud. Alternatively, MSFI argues that even if a reverse pierce in the absence of fraud is permissible, the SBA's characterization of MSFI as the alter ego of the senior McCalls is invalid under the applicable test.

## IV

■ We first address MSFI's argument that the SBA improperly used the alter ego doctrine to pierce the corporate veil in "reverse." To support its unidirectional theory of the alter ego doctrine, appellant cites a single case, *Olympic Capital Corp. v. Newman,* 276 F.Supp. 646, 655 (C.D.Cal.1967), which stated in dictum that the doctrine may be invoked only to reach the assets of an individual debtor deemed to be the alter ego of a corporation, and not vice versa. The *Olympic Capital* court's analysis, however, was limited to the observation that the case upon which its plaintiff had relied, *Hudson v. Wylie,* 242 F.2d 435 (9th Cir.), *cert. denied,* 355 U.S. 828, 78 S.Ct. 39, 2 L.Ed.2d 41 (1957), did not itself involve a reverse-pierce situation. 276 F.Supp. at 655. The court could cite no authority or equitable principle to justify distinguishing *Hudson* because it happened to involve a forward pierce. Indeed, the *Olympic Capital* court's dictum is contrary to an overwhelming weight of authority. *See, e.g., Zahra Spiritual Trust v. United States,* 910 F.2d 240, 243–45 (5th Cir.1990) (reverse pierce permitted to reach assets of corporation deemed to be the alter ego of individual who owed federal tax debt); *Dahl v. Gardner,* 583 F.Supp. 1262, 1268 (D.Utah 1984) (collecting cases); *see also* 1 Fletcher, *supra,* § 41.70; *cf. First Nat'l City Bank v. Banco Para El Comercio Exterior*

*de Cuba,* 462 U.S. 611, 629, 103 S.Ct. 2591, 2601, 77 L.Ed.2d 46 (1983) (bank could offset deposits of corporation deemed to be the alter ego of the Cuban Government, which had nationalized the bank's assets in Cuba). MSFI's attempt to have this court impose a rigid, categorical delimitation on what is supposed to be a flexible and fact-specific doctrine must be rebuffed.

■ For the same reasons, we also must reject MSFI's fall-back position that the alter ego doctrine at least should not be applied in reverse absent fraud, none being alleged in this case. For support, MSFI cites *Dahl,* 583 F.Supp. 1262, and *Towers v. Titus,* 5 B.R. 786 (N.D.Cal.1979). In each of these cases, the alter ego doctrine was applied to reach assets that individual debtors fraudulently conveyed to their corporate alter egos. Neither case, however, suggests that the doctrine is limited to circumstances involving fraud. On the contrary, the law of fraudulent conveyances itself does not require a showing of actual fraudulent intent so long as the elements of constructive fraud are present. Moreover, to infer such a limitation would ignore longstanding federal common law as well as the law of Iowa and the vast majority of other states. *See Anderson v. Abbott,* 321 U.S. 349, 362, 64 S.Ct. 531, 538, 88 L.Ed. 793 (1944) (fraud not a prerequisite for veil-piercing); *Pisani,* 646 F.2d at 88 (same); *accord Adam v. Mt. Pleasant Bank & Trust Co.,* 355 N.W.2d 868, 872 (Iowa 1984) (adopting the *Lakota* court's articulation of the alter ego test); *Jablonsky v. Klemm,* 377 N.W.2d 560, 563 (N.D.1985) (citing 1 Fletcher, *supra,* § 41.30 and cases from Minnesota, Wyoming, and the federal system); *see also Castleberry v. Branscum,* 721 S.W.2d 270, 272–73 (Tex.1986) (use of word "fraud" in veil-piercing discussions is "sometimes confused with intentional fraud; however, '[n]either fraud nor intent to defraud need be shown as a prerequisite ...; it is sufficient [that piercing would avoid] an inequitable result' ") (citation omitted); *Drilcon, Inc. v. Roil Energy Corp.,* 230 Mont. 166, 749 P.2d 1058, 1064 (1988) (same) (citing cases from Minnesota, Wisconsin, and Virginia). *But see Symons Corp. v. Tartan–Lavers Delray Beach, Inc.,* 456 So.2d 1254, 1262

(Fla.Dist.Ct.App.1984) (Hurley, J., dissenting).[6]

■ With regard to MSFI's argument that the uncontested facts do not satisfy the requirements of the applicable alter ego test, we turn to *Pisani, Lakota,* and *Mt. Pleasant Bank* for an enunciation of those requirements. Under those cases, a corporation may be deemed the alter ego of an individual if the corporation is, among other things, undercapitalized, fails to observe corporate formalities, pays no dividends, is insolvent, lacks corporate records, or is merely a facade. *See also Boyd v. Boyd & Boyd, Inc.,* 386 N.W.2d 540, 545 (Iowa App.1986) (noting that this list of factors is not an "exclusive or even exhaustive one."); 1 Fletcher, *supra,* §§ 41.30–.60 (comprehensive exposition of relevant factors).

■ It is undisputed that MSFI had no savings account, no financial reserves, no investments, and no assets apart from a few pick-up trucks. All the land subject to MSFI's operations was casually leased to it without formal instruments, and all the farm equipment was owned personally by the McCalls and leased to MSFI. No capital was invested in the corporation. The individ-

uals made loans to the corporation that were never repaid. These loans to MSFI were not formally documented, had no terms of payment, and bore no interest. MSFI never paid its corporate officers any salary or other compensation. The corporation never declared any dividends. Mr. and Mrs. McCall made all the decisions regarding the corporation's farm business.

MSFI argues on appeal, notwithstanding the foregoing, that its absence of financial worth is offset by the McCalls' contribution of their time, "their greatest asset," to the corporation. MSFI also seeks to excuse adherence to corporate formalities because it is a small, family-run operation in rural Iowa. These arguments cannot thwart the government's effort to collect over $100,000 remaining due on the SBA disaster loan.

■ We also reject MSFI's contention that it received legally insufficient notice that SBA would offset payments due to it from ASCS. The notice argument concedes that the December 16, 1987, letter from SBA is addressed jointly to MSFI and Mr. and Mrs. McCall, and that the body of the letter contains all the information required by the applicable statute and regulations. MSFI's

6. Because the law of Iowa—domicile of the McCall family and MSFI's state of incorporation and operation—is consistent with federal common law on the fraud question, as well as with the federal version of the alter ego test, there is no conflict of laws necessitating a choice between state and federal rules of decision. In two SBA cases, *United States v. Yazell,* 382 U.S. 341, 352–53, 86 S.Ct. 500, 506–07, 15 L.Ed.2d 404 (1966) and *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 718, 99 S.Ct. 1448, 1453, 59 L.Ed.2d 711 (1979), the Supreme Court refused to displace certain state marital property and lien priority rules with uniform rules of federal common law, even though that placed certain assets beyond the reach of the United States in its loan-debt collection efforts, after considering (1) the need for national uniformity, (2) whether the state law rules would "frustrate specific objectives" of the federal programs, and (3) the extent to which federal rules might "disrupt commercial relationships predicated upon state law." 440 U.S. at 728–29, 99 S.Ct. at 1458–59.

Since there is no conflict, we need not consider the question whether the SBA's use of a post-*Kimbell Foods* statute with a particularly strong debt-collection policy, *see* S.Rep. No. 378, 97th Cong., 2d Sess. 2–4, *reprinted in* 1982 U.S.C.C.A.N. 3377, 3378–80; Matter of: Offset

Under Statutes Other than Debt Collection Act of 1982, 64 Op. Comp. Gen. 142, 143–44 (1984), and the effect of state veil-piercing law on the achievement of the statute's objectives, might sufficiently distinguish *Yazell* and *Kimbell Foods* to bring this case under the holding of *United States v. Security Trust & Sav. Bank,* 340 U.S. 47, 49–51, 71 S.Ct. 111, 112–114, 95 L.Ed. 53 (1950), in which the Court displaced state lien-priority rules with a federal rule where the collection of federal *tax* debts, as opposed to federal loan debts, was at stake.

We note that the circuits have split on the need for a uniform national veil-piercing rule in other federal statutory contexts. *Compare Zahra Spiritual Trust v. United States,* 910 F.2d 240, 242–45 (5th Cir.1990) (reverse pierce) (while federal lien-priority rule displaces state lien-priority rules in tax-debt collection cases, state law determines initial question whether corporation is alter ego of individual tax debtor) (citing *Aquilino v. United States,* 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960)) *with Pisani,* 646 F.2d at 85–87 (reverse pierce) (applying federal alter ego test where court perceived *potential* conflict and disuniformity in alter ego law in a case involving federal efforts to recover overpayments from Medicare to health care provider).

sole challenge to the sufficiency of the notice is that it refers in its body to MSFI and Mr. and Mrs. McCall collectively as "you," particularly in the sentence reading "[i]f you do not pay the SBA the amount indicated above by January 16, 1988, the SBA intends to offset that amount against any amount due you through the ASCS Program." MSFI contends that the notice is legally insufficient because the word "you" is ambiguous and thus did not put the corporation on notice that ASCS payments to MSFI would be offset to satisfy the McCalls' debt to SBA. On January 29, 1988, Mr. and Mrs. McCall, through counsel, notified SBA by letter that they objected to any offset against monies payable by ASCS to MSFI and requested further communication from SBA if it intended to offset payments to MSFI. On February 3, 1988, before any offsets occurred, SBA responded to McCalls' counsel in a letter expressly stating SBA's intention to offset payments to MSFI. SBA in that letter further notified the McCalls that ASCS regulations specifically permitted administrative offsets against newly-created entities when true ownership of the farm inventory remains the same notwithstanding the creation of the corporate entity. *See* 7 C.F.R. § 1408.16 (1988) (redesignated as amended at 7 C.F.R. § 1403.7(q) (1993)). On the facts of this case, it is simply not possible for MSFI to contend that it lacked notice that SBA intended to offset payments by ASCS to it to satisfy the McCalls' debt to SBA.

Even less compelling and finally is MSFI's argument that the SBA failed to follow its own regulation which allows use of administrative offset only "after attempting to collect a claim from a person under normal SBA collection procedures." 13 C.F.R. § 140.5(a) (1993). Specifically, MSFI contends that the SBA before invoking the offset was required to attempt collection of the debt by foreclosing on the McCalls' land in which SBA held a security interest, by conducting mediation, or by filing a suit against the McCalls. At the foreclosure by a senior lienholder on the McCalls' land subject to the SBA's lien, the SBA did not buy the land because it was worth less than the amount due to the senior creditor. Furthermore, Mr. and Mrs. McCall were proving hard to collect from, since they had filed two chapter 11 bankruptcy petitions and had paid a creditor junior to SBA over $200,000. In these circumstances, SBA determined that all viable means of collection short of offset had been exhausted. Furthermore, MSFI's argument that mediation or direct suit must precede use of an administrative offset has no basis in statute or regulation. On the record before this court, we cannot declare that SBA's failure to foreclose on, mediate with, or directly sue the McCalls was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

For the foregoing reasons, we hold that the SBA's decision to pierce the corporate veil on the facts of this case was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The summary judgment of the Court of Federal Claims upholding the agency's action is, accordingly,

AFFIRMED.