29 F.3d 645
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
LA AMISTAD RESIDENTIAL TREATMENT CENTER, Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 93-5206.
 United States Court of Appeals, Federal Circuit.
 June 14, 1994.
 
 Before RICH, MICHEL and CLEVENGER, Circuit Judges.
 CLEVENGER, Circuit Judge.
 
 
 1
 This case involves the refusal of the government to make certain payments to La Amistad Residential Treatment Center to share the costs for medical services it rendered to a daughter of a deceased member of the United States uniformed services. La Amistad brought suit under the Tucker Act in the United States Court of Federal Claims to recover those payments, to which it claimed entitlement under the provisions of the Dependents' Medical Care Act, Pub.L. No. 84-569, 70 Stat. 250 (1956) ("Act"), codified as amended at 10 U.S.C. Secs. 1071-1103 (1988 & Supp. V 1993). The case was decided on cross motions for summary judgment. Finding no error in the administrative decision that denied La Amistad's claim, the court denied La Amistad's motion and granted summary judgment in the government's favor. We reverse.
 
 
 2
 * The Act authorizes the Secretary of Defense to contract with private civilian sources to provide medical care for eligible beneficiaries, including dependents of retired, deceased and active duty members of the uniformed services. This service is performed through the Office of the Civilian Health and Military Program of the Uniformed Services (the office being known as "OCHAMPUS" and the program itself as "CHAMPUS"). OCHAMPUS employs the services of Health Management Strategies International, Inc. ("HMS") to precertify and review the care provided to CHAMPUS beneficiaries in residential treatment centers.
 
 II
 
 3
 The facts in this case are unpleasant and undisputed. The patient treated by La Amistad was exposed as a child to an extremely harsh and violent environment. The child's mother and father divorced when the child was five years old. Before the divorce, the child witnessed frequent occasions when the father, an alcoholic and drug abuser, physically and verbally abused her mother. On two occasions, the father attempted suicide in front of the child. The mother committed the father to a psychiatric hospital after further occasions of domestic violence. At age nine, the child was present when her father fell into argument with a neighbor, who became enraged, produced a gun and went on a shooting rampage. The girl was in the backyard swimming pool with her uncle at the time. The neighbor shot the uncle, and chased her parents into the front yard, where he shot the father dead and wounded the mother and the aunt. The neighbor returned to the pool to kill the uncle, while the child hid underwater playing dead. The mother was hospitalized for her wounds, but discharged herself against medical advice upon learning that the daughter had sat rocking in a corner for twelve days. The child received no treatment following this gruesome event.
 
 
 4
 By the time the child reached fifteen, a range of behavioral manifestations of profound emotional disturbance (including rebelliousness, impetuosity, alcohol and drug abuse, promiscuity, and dysfunctional home and school attitudes) required her commitment to a psychiatric hospital, where she remained for six months. Her treatment at the hospital included the anti-depressant drug Pamelor, but upon discharge from the hospital she stopped taking the drug. She was soon hospitalized again, from January 24 to April 3, 1990. She was then released directly to La Amistad for longer term care in its non-acute inpatient facility. The stage was thus set for the legal dispute we must resolve.
 
 III
 
 5
 Upon admission to La Amistad, the patient was diagnosed as suffering from major depression (single episode), conduct disorder (group-type), and borderline personality disorder. A one year program of behavior modification was prescribed, including weekly individual and group psychotherapy, drug education, physical, recreational and occupational therapy, and monthly family therapy with her mother. She also would attend school five days a week at the center. On her third day at La Amistad, the patient stated her refusal to take any antidepressant drug "ever", thereby exercising her right as a sixteen year old to refuse medication. On frequent occasions during her stay at the center, her doctors unsuccessfully urged her to change her mind and accept antidepressant medication.
 
 
 6
 In the course of performing its services for CHAMPUS, HMS certified the appropriateness of La Amistad's care for the patient from the date of her admission on April 3, 1990, through June 26, 1990. On August 6, 1990, however, HMS issued a notice to La Amistad stating that claims for services rendered during the patient's continued stay after June 26 would not be paid by CHAMPUS. The stated reason for that claim denial was "adequate information was not made available during the review process to assess the medical necessity of treatment." On September 11, 1990, La Amistad requested reconsideration of HMS's decision, and thus invoked the administrative process which produced the decision upon which La Amistad brought suit. On November 2, 1990, the patient was discharged from La Amistad against medical advice. The patient's discharge summary noted that she had continuously resisted the drug therapy suggested by her doctors, stating that if started on an antidepressant drug, she would not continue taking it.
 
 
 7
 In support of its request for reconsideration, La Amistad supplied HMS with a volume of medical records which in its view demonstrated the appropriateness of the treatment being provided to the patient. HMS submitted the records for review by a psychiatrist, Dr. Shiffrin, who concurred in the decision to deny certification. His decision was based on his view that the documentation submitted by La Amistad did not support ongoing active treatment of the patient's disorder, because he concluded that the patient "clearly needs mood stabilizing drugs or antidepressants", and the documentation contained no explanation of the patient's reason for refusing that medication or what efforts the center had made to change the patient's mind about taking that medication. Based on Dr. Shiffrin's conclusion, HMS denied La Amistad's request for reconsideration and advised the center of its right to appeal to OCHAMPUS.
 
 
 8
 La Amistad's appeal to OCHAMPUS included additional medical records. The record was then reviewed by another psychiatrist, Dr. Siegel, who also concurred in denial of certification after June 26, 1990, noting that the center had failed to convince the patient to take antidepressant medication.
 
 
 9
 The next pause along the administrative highway was in the Office of Appeals and Hearings of OCHAMPUS, where a formal review decision was entered by a hearings and appeals analyst, upholding the conclusions of Drs. Shiffrin and Siegel and noting the center's failure to change the patient's mind about the need for antidepressant medication. The formal review decision notified La Amistad of its right to a hearing at which the debate could continue.
 
 
 10
 La Amistad timely requested such a hearing. Pursuant to the rights afforded by 32 C.F.R. Sec. 199.10(d)(2) (1990), the center submitted additional documentary evidence and testimony at the hearing relevant to the appealed issue of whether La Amistad was entitled to payment by OCHAMPUS for the post-June 26 treatment of the patient. The hearing officer determined that the OCHAMPUS decision to deny benefits was based on the conclusions of the two HMS psychiatrists that appropriate treatment stopped when the center failed to overcome the patient's resistance to antidepressant drug therapy. The hearing officer referred to testimony from the center's treating psychiatrist stating that she had explored with the patient the reasons for her resistance to the recommended drug therapy but had not documented those discussions. Among the undocumented reasons explained at the hearing were the patient's "fear of being involved in substance abuse" and the doctor's view that use of such medication would only have been a part solution to the patient's ills, and the high risk that the patient would become noncompliant with a regime of drug therapy upon her release from the center. In the unchallenged testimony of the treating psychiatrist, the patient was, albeit slowly, making some progress out of the depths of her depression. The hearing examiner noted, however, that those explanations were not documented in the paper record which the center had submitted in its reconsideration quest. According to the hearing officer, his decision could be made only on the basis of the paper record before him. Consequently, he gave no weight to the testimony at the hearing and issued his recommended decision that the OCHAMPUS review decision be affirmed. La Amistad's request for cost sharing of the treatment provided after June 26 was once again denied. On November 30, 1992, the Director OCHAMPUS issued his final decision, which adopted and incorporated by reference the hearing officer's recommended decision.
 
 IV
 
 11
 In the Court of Federal Claims, the parties agreed that the legality of OCHAMPUS's denial of certification for treatment rendered after June 26 is to be tested under the standards of review set forth in the Administrative Procedure Act, 5 U.S.C. Secs. 701-706 (1988). In order to prevail, La Amistad had to demonstrate that the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. Sec. 706(2)(A). The court concluded that the undisputed record supported the government's contention that La Amistad failed to provide active treatment for the patient after June 26. Under such circumstances, La Amistad was not entitled to payments under CHAMPUS after June 26, and summary judgment for the government was entered.
 
 V
 
 12
 We review the agency's action on the same standard as that applied by the Court of Federal Claims. Therefore, we independently review the administrative record. See, McCall Stock Farms, Inc. v. United States, 14 F.3d 1562 (Fed.Cir.1993). The record before the Director of OCHAMPUS cannot support his decision. For the reasons set forth below, OCHAMPUS's conclusion that active treatment stopped when the center failed to overcome the patient's resistance to drug therapy is irrational and therefore arbitrary and capricious. Furthermore, the hearing examiner erred in dismissing the relevance of the testimony at the hearing which explained why the patient refused to accept drug therapy and set forth the center's unsuccessful efforts to overcome the patient's resistance to drug therapy.
 
 
 13
 * The government does not contest La Amistad's assertion that the sixteen year-old patient had the right to refuse the proffered drug therapy. Furthermore, the government readily admits that in the short time the patient resided at La Amistad she "made some improvement in her self destructive behavior." In addition, at no time in the whole of the administrative review process has OCHAMPUS contended that La Amistad made any mistake in its treatment other than its failure to compel the patient to undergo the drug therapy prescribed by Dr. Schiffrin and to document in the medical records the reasons for its failure. Finally, the record verifies that the manifold treatments provided from the patient's admission to June 26, which provided some small measure of success, were continued thereafter, also with ups and downs and slow progress toward improvement.
 
 
 14
 The only basis for OCHAMPUS's conclusion that active treatment stopped on June 26 is the center's failure to compel the patient to yield to drug therapy and to document that failure. Short of forcing the drugs on the patient against her rightful will, La Amistad's only choice was to continue the medical treatment regime that was producing slow progress. Because drug therapy was not available, and because OCHAMPUS has suggested no other therapy that La Amistad could or should have provided in its treatment, there is no rational basis on which OCHAMPUS can defend its view that active treatment stopped on June 26, 1990.
 
 B
 
 15
 Specific regulations govern the hearing process which OCHAMPUS provided to La Amistad. The party initiating the hearing submits the formal review determination and may include any other information or documents not previously submitted to the agency. 32 C.F.R. Sec. 199.10(d)(1)(i) (1990). Any party may submit additional evidence or testimony at the hearing. Id. Sec. 199.10(d)(2). Following the hearing, the hearing officer is required to submit a written recommended decision to the Director of OCHAMPUS. That decision must contain "a statement of findings and a statement of reasons based on the evidence adduced at the hearing...." Id. Sec. 199.10(d)(12) (emphasis added.) Each finding by the hearing examiner "must be supported by substantial evidence that is defined as such evidence as a reasonable mind can accept as adequate to support a conclusion." Id. Sec. 199.10(d)(12)(i) In sum, the hearing officer must render a recommended decision based on the whole record made at the hearing, not simply on the basis of the documentary record submitted to the agency before the hearing begins.
 
 
 16
 The complaint of OCHAMPUS's two reviewing doctors was that La Amistad had not adequately documented in its medical records the reasons why it had not amended its course of treatment to include antidepressant drug therapy. Had the hearing officer credited the uncontested testimony from the treating physician or the statements in the patient's discharge summary, the concerns of the reviewing doctors would have been fully satisfied. Once the concerns of the reviewing doctors are satisfied, there is no remaining basis to support a conclusion that active treatment of the patient stopped on June 26.
 
 
 17
 Lacking any rational basis, the agency action in this case is therefore arbitrary and capricious. The Court of Federal Claims erred in not so concluding. Its judgment is therefore reversed and the case is remanded for entry of judgment in favor of La Amistad.