# United States Court of Appeals
# for the Federal Circuit

---

**COOPER/PORTS AMERICA, LLC,**
*Appellant*

**v.**

**SECRETARY OF DEFENSE,**
*Appellee*

---

2019-1692

---

Appeal from the Armed Services Board of Contract Appeals in Nos. 61348, 61351, 61536, 61537, Administrative Judge James R. Sweet, Administrative Judge Owen C. Wilson, Administrative Judge Richard Shackleford.

---

Decided: May 29, 2020

---

ANDREW M. GROSSMAN, Baker & Hostetler LLP, Washington, DC, argued for appellant. Also represented by WILLIAM BARRON ARBUTHNOT AVERY.

KELLY A. KRYSTYNIAK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by ANTHONY F. SCHIAVETTI, JOSEPH H. HUNT, ROBERT EDWARD KIRSCHMAN, JR., PATRICIA M. MCCARTHY; JEFFREY P. HILDEBRANT, CARYL A. POTTER, III, DANIELLE RUNYAN,

Air Force Legal Operations Agency, Joint Base Andrews, MD.

———————————

Before DYK, TARANTO, and CHEN, *Circuit Judges.*

DYK, *Circuit Judge.*

Cooper/Ports America LLC ("CPA") provided stevedoring and related terminal services to the government under a contract dated January 28, 2015. CPA submitted a claim that the government failed to provide a timely preliminary written notice of intent to exercise the government's option to extend the parties' contract, and that the subsequent option exercise was ineffective. The claim was denied by a contracting officer, and CPA appealed before the Armed Services Board of Contracts Appeals ("Board"). The Board held that the government satisfied the preliminary written notice requirement. We affirm.

## BACKGROUND

In January 2015, CPA's predecessor-in-interest, Shippers Stevedoring Co. ("SSC"), was awarded a contract from the United States Transportation Command, a component of the Department of Defense. The United States Transportation Command supports military transportation to other commands and government organizations. The contract required SSC to provide stevedoring and related terminal services along the Eastern Seaboard of the United States, including Charleston, South Carolina ("the Charleston contract," HTC711-15-D-R036). SSC was separately awarded a contract covering the Gulf region ("the Beaumont contract," HTC711-15-D-R037). Only the Charleston contract is at issue in this appeal.

The original Charleston contract executed by SSC incorporated a Federal Acquisition Regulation ("FAR") provision (section 52.217-9) that gave the government options to extend the term of the agreement for up to four one-year

periods. That provision required that the government give CPA "a preliminary written notice of its intent to extend at least 60 days before the contract expire[d]." J.A. 65; *see also* 48 C.F.R. § 52.217-9 ("Option to Extend the Term of the Contract"). Providing such notice did not obligate the government to actually exercise the option. After the preliminary notice, the government was required to exercise the option itself within 15 days of the contract expiration date. Section 52.217-9 contained no language permitting adjustment of the contract price.

The original contract term expired on June 30, 2016. On April 28, 2016, the government provided a preliminary written notice of its intent to exercise the first-year option to extend the term of the Charleston contract to June 30, 2017. This communication was in a formal letter titled "Contract HTC711-15-D-R036, Preliminary Notice of Intent to Exercise Option" and stated that "[i]n accordance with FAR [§] 52.217-9, Option to Extend the Term of the Contract, [SSC is] hereby given preliminary notice of the Government's intent to extend the term of the contract through 30 June 2017." J.A. 107. Thereafter, on June 15, 2016, the government exercised the first-year option, extending the contract period to June 30, 2017. If the government wished to exercise its option for a second-year extension, it had to provide CPA a preliminary written notice of its intent by May 1, 2017, pursuant to the 60-day notice requirement of section 52.217-9.

SSC's business experienced difficulties, and this led to CPA's acquisition of SSC's assets on September 30, 2016.[1] CPA replaced SSC as a party to the Charleston contract through novation and modification agreements that were signed on November 15, 2016, and December 19, 2016,

---

[1]    CPA was named "Integrated Marine Services, LLC" when it acquired SSC's assets. CPA changed to its current name in October 2016.

respectively. Similar agreements were reached with respect to the Beaumont contract.

After CPA purchased SSC's assets on September 30, 2016, it began urging the government to revise the pricings of the Charleston and Beaumont contracts. CPA then asserted that it might default on the contracts because the contracts' pricings were not profitable. On January 31, 2017, the government's contracting officer, William Seamon, sent an email ("the January 31 email") to CPA's Vice President of Operations, Chris Lewis, stating:

> The Government intends to exercise options at awarded rates on contracts HTC711-15-D-R036 [(i.e., the Charleston contract)] and HTC711-15-D-R037 [(i.e., the Beaumont contract)]. With this, the Government expects [CPA] to continue performing per the terms and conditions of the contract.

J.A. 117. The question here is whether this email constituted a preliminary written notice with respect to the Charleston contract.

No such issue exists with respect to the Beaumont contract, because on February 1, 2017, Mr. Seamon sent a formal letter, stating that "[CPA was] hereby given preliminary notice of the Government's intent to extend the term of the [Beaumont] contract through 2 April 2018." J.A. 111. But it was not until May 3, 2017, that Mr. Seamon sent a formal letter to CPA concerning the Charleston contract, stating that "[CPA was] hereby given preliminary notice of the Government's intent to extend the term of the [Charleston] contract through 30 June 2018." J.A. 109. The May 3 letter would not have been a timely preliminary notice under the contract.

On June 9, 2017, CPA responded to the May 3 letter and stated that the government's preliminary written notice under section 52.217-9 was untimely because the May 3 letter was received after May 1, 2017. On June 13,

2017, the government pointed to the January 31 email as the preliminary written notice of its intent to exercise the second-year option, and sent a letter exercising that option. On June 15, 2017, CPA responded that it would "be performing the Modification [of the Charleston contract] under protest" because that contract "w[ould] expire by its own terms with the conclusion of the period of performance on June 30, 2017." J.A. 134.

Beginning in July 2017, CPA filed several claims with the government, seeking a declaration that the Charleston contract had expired and requesting compensation for additional money for its performance under protest. A contracting officer denied the claims, and CPA appealed to the Board. The Board granted summary judgment in favor of the government, holding that "the January [31] email was a preliminary notice of intent," J.A. 9, and that the "email unambiguously, absolutely, and positively provided preliminary written notice of the government's intent to extend at least 60 days before the contract expired on May 1, 2017," J.A. 6.

CPA appeals, and we have jurisdiction under 41 U.S.C. § 7107(a)(1) and 28 U.S.C. § 1295(a)(10). We review de novo the "the Board's conclusions of law, including grants of summary judgment," *Rex Sys., Inc. v. Cohen*, 224 F.3d 1367, 1371 (Fed. Cir. 2000), and the "interpretation of a government contract," *Lear Siegler Servs., Inc. v. Rumsfeld*, 457 F.3d 1262, 1266 (Fed. Cir. 2006). After oral argument, at our request, the parties supplemented the record on appeal to include additional record documents relating to communications between the parties before and after their January 31 email exchange.

## DISCUSSION

The issue in this case is whether the government's January 31 email was a "preliminary written notice" required by section 52.217-9. CPA argues that the January 31 email was ineffective for various reasons. Some of these are

without substance, such as CPA's contentions that the notice was unclear as to whether it referred to the Charleston contract (it did so specifically); that the notice was ambiguous as to whether it was directed to the second option year or a later year (there was no ambiguity); or whether it was ambiguous because in contrast to the earlier notice for the first-year option it was informal (the contract did not require formality). We discuss below CPA's other arguments.

First, CPA asserts that the notice was ambiguous because there was no way to know whether the January 31 email referred to the one-year option under section 52.217-9 or the six-month option under section 52.217-8, which was also provided in the contract. We have recognized that a required notice must be unambiguous. *See McCall Stock Farms, Inc. v. United States*, 14 F.3d 1562, 1569–70 (Fed. Cir. 1993); *see also First Commerce Corp. v. United States*, 335 F.3d 1373, 1379–80 (Fed. Cir. 2003) (holding that a binding agreement requires an unambiguous acceptance); *Holly Corp.*, ASBCA No. 24975, 83-1 BCA ¶ 16,327, 1983 ASBCA LEXIS 272, at *21 ("The acceptance of an option, to be effectual, must be unqualified, absolute, unconditional, unequivocal, unambiguous, positive, without reservation, and according to the terms or conditions of the option."). We think that a similar standard applies to the sufficiency of a preliminary notice of intent to exercise an option in that it must provide clear notice to a reasonable recipient.

The sufficiency of a notice is generally considered in the context of the communication between the parties. *Empire Energy Mgmt. Sys., Inc. v. Roche*, 362 F.3d 1343, 1356 (Fed. Cir. 2004) (considering circumstances outside the notice); *Halifax Engineering, Inc. v. United States*, 915 F.2d 689, 691 (Fed. Cir. 1990) (same); Black's Law Dictionary (11th ed. 2019) (explaining that due notice is "notice that is legally adequate given the particular circumstance").

Here, CPA claims that the notice was unclear because there was another option provision in the contract.  In addition to the "Option to Extend the Term of the Contract" by one-year extensions (section 52.217-9), the Charleston contract included a separate "Option to Extend Services" provision (section 52.217-8).  This latter provision stated that "[t]he Government may require continued performance of any services . . . . The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months." J.A. 65; *see also* 48 C.F.R. § 52.217-8.  In support of its claim, CPA asserts that Mr. Seamon (the contracting officer) testified that the January 31 email "could be interpreted as [referring to] either -9 or -8."    J.A. 257. Mr. Seamon, however, was discussing the email's language on its face, and stated that he believed the January 31 email constituted a notice:

> Q:  . . . [Do] you think [the January] E-mail constitutes preliminary notice of an intent to exercise an option on the contract?
>
> A: Yes.
>
> Q: Okay.  Why is that?
>
> A:  Because it specifically states that the government intends to exercise options at award rates on both contracts . . . .

J.A. 4 (alterations in original).  In any event, as we discuss below, the subjective and uncommunicated view of the parties as to the notice is of no relevance.    Unlike section 52.217-9, the "Option to Extend Services" provision did not require a preliminary written notice.  That fact alone makes it unlikely that a reasonable recipient of the notice would think that the January 31 email was related to the "Option to Extend Services" provision.  Significantly, the record shows that in late 2016 and early 2017 the parties were discussing pricing for the Charleston contract,

including the next one-year option extension period, and that the subject of the January 31 email was understood to be the option for a one-year extension period under section 52.217-9.

It appears that as early as October 2016 CPA asked for a rate increase under the contract. It is apparent that CPA was concerned about performing the contract at the existing pricing during additional option periods. Only a few months remained in the Charleston contract that was set to expire on June 30, 2017. On January 21, 2017, Mr. Lewis of CPA emailed Mr. Seamon, stating that "I'd like to discuss next steps for processing the contact [sic] modifications for the labor increase we talked about from Oct. 1st." S.A. 2. On January 24, 2017, Mr. Seamon emailed Mr. Lewis with a subject line "SSC-Charleston," stating that he was "attach[ing] . . . the final schedule of rates from SSC for [the Charleston contract]" in light of their "rate adjustment conversation." S.A. 4–5. In response, on January 24 and 25, 2017, Mr. Lewis communicated that he would "try to back into the numbers so [they could] have an agreed starting point," S.A. 4, and would "start working on the adjustment and w[ould] forward for [Mr. Seamon's] review," S.A. 3.

A few days later, Mr. Seamon sent the January 31 email, stating that "[t]he Government intends to exercise options at awarded rates on [the Charleston and Beaumont contracts]." J.A. 117. At the same time, Mr. Seamon rejected any price adjustments, stating that "the Government expects [CPA] to continue performing per the terms and conditions of the contract." *Id.* After the January 31 email, on February 23, 2017, Mr. Lewis emailed Mr. Seamon, urging an "increase [to be] reflected in option year two of the final SSC-Charleston schedule." S.A. 36 (emphasis added). The parties continued to discuss the "O[ption]Y[ear]2 rates." S.A. 57 (March 21, 2017 email); S.A. 60 (showing future adjusted rates for the next one-year period). Under these circumstances, there was no

ambiguity and CPA "had sufficient notice" that the January 31 email was directed to the second-year option of the Charleston contract. *Empire*, 362 F.3d at 1356 (quoting *Halifax*, 915 F.2d at 691).

Second, CPA claims that the January 31 email was not effective because the government did not intend it to be a "preliminary written notice" under section 52.217-9, and that CPA did not understand it to be such a notice. This argument lacks merit because the January 31 email expressly stated that "[t]he Government intends to exercise options at awarded rates [of the Charleston and Beaumont contracts]." J.A. 117. It is well established that a notice is judged by objective standards. *See NEC Sols. (Am.), Inc. v. United States*, 411 F.3d 1340, 1346 (Fed. Cir. 2005) (holding that the sender's intent and the recipient's knowledge of that intent were irrelevant to whether an email constituted notice required by a Customs statute and "the relevant inquiry [wa]s whether [the recipient] would or could have reasonably comprehended the e-mail as being unambiguous"); *see also United States v. Locke*, 471 U.S. 84, 88–89, 102 (1985) (holding that the plaintiffs' actual intent was irrelevant to whether they satisfied a federal mining statute's requirement to file a notice of intent to hold a mining claim by a certain date); *Rodash v. AIB Mortg. Co.*, 16 F.3d 1142, 1145–46 (11th Cir. 1994) (holding that the sender's subjective intent and recipient's misunderstanding of the notice required under the Truth in Lending Act ("TILA") was irrelevant to compliance with that requirement), *abrogated on other ground by Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir. 1996); *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1122 (9th Cir. 2009) (holding that a sender's "undisclosed intent to act inconsistent with its disclosures" required under the TILA was "irrelevant in determining the sufficiency of those disclosures"). The government's purported undisclosed intent and CPA's subjective understanding here did not make an otherwise valid notice ineffective.

Finally, CPA contends that the January 31 email failed to give notice because it "d[id] not comply with FAR § 17.207(g)'s requirement that any 'written document which notifies the contractor of the exercise of the option shall cite the option clause as authority.'"  Appellant's Br. 24 (quoting 48 C.F.R. § 17.207(g)).  CPA claims that the January 31 email should have explicitly identified section 52.217-9 in order for it to be an effective notice.  We agree with the Board that "by its plain terms, FAR [§] 17.207(g) only applies to '[t]he contract modification or other written document which notifies the contractor of the exercise of the option,' and not to the preliminary notice of the intent."  J.A. 8–9 (second alteration in original).

## CONCLUSION

For the foregoing reasons, we uphold the Board's decision.

## **AFFIRMED**

### COSTS

No costs.